Mary MacFADDEN, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 12277.

United States Court of Appeals Third Circuit.

Argued Nov. 19, 1957.

Decided Dec. 18, 1957.

Jerome R. Miller, Newark, N. J. (Sydney A. Gutkin, Jerome Stein, Newark, N. J., on the brief), for appellant.

Davis W. Morton, Jr., Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

The question here involved is whether a divorced wife must pay income tax on payments made to her by her former husband under a written agreement between them. The law involved is § 22(k) of the Internal Revenue Code of 1939, 26 U.S.C. § 22(k). The years involved are 1946 to 1950 inclusive. Taxpayer lost in the Tax Court, 15 C.C.H.Tax Ct.Mem. 1494 (1956), and brings the case here for review.

Bernarr MacFadden and Mary Mac-Fadden were married in 1913. The document out of which the litigation grows was executed April 7, 1932. By the terms of the 1932 agreement a trust was set up the income of which was to be paid to Mary MacFadden during her lifetime, with a provision that if the income was not sufficient to bring payments up to a certain sum additional money would be paid to do so.

Neither side has given us the contract in its entirety and each side has quoted portions thought favorable to its position.

The paragraph most favorable to the Commissioner's position states:

"The provision herein made for the support and maintenance of the party of the second part is hereby expressly agreed to be in lieu of all alimony or suit money and the party of the second part expressly covenants and agrees to receive the said income from said trust in lieu of any such alimony or suit moneys, and hereby expressly covenants and agrees that so long as the conditions of this agreement are complied with by the party of the first part, she will not make any claim for alimony,

counsel fee, or suit money, either for herself or for the children of the said marriage, in any action for divorce which she may commence against the party of the first part. * * * * "

As against this provision the taxpayer points out that the wife gave up certain rights. She agreed that so long as the terms of the agreement were complied with she would "at no time take any step or action which would hold the said party of the first part up to public ridicule, contempt or unfavorable notoriety and publicity, and the domestic unhappiness of the parties shall be kept between the parties hereto. * * * " It is suggested that by these terms she agreed not to sue for divorce. She also testified at the trial of this case, if the information is relevant, that she did not contemplate divorce at the time of the agreement.

To apply § 22(k) to the various disputes arising between taxpayers and Commissioner illustrates the difficulty of providing language that will categorically resolve widely differing fact situations. Here we have an agreement executed ten years before § 22(k) was passed. It was not until 1946 that a divorce resulted from proceedings instituted in Florida by the taxpayer's husband.[1]

The controlling words in § 22(k) are as follows:

"In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments * * * received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in

---

1. Of doubtful relevance is a provision in the Florida decree as follows:

"It appearing that support of the wife having been adequately provided for by separate agreement, no adjudication thereon is made but jurisdiction is retained to be exercised in event that subsequent developments justify further or other relief in respect thereto."

We think it is of doubtful relevance because it can show no more than that the

Florida judge considered that the matter of the wife's right of alimony had already been taken care of. That thought, we believe, does not help us to decide the application of § 22(k).

Compare Lerner v. Commissioner, 2 Cir., 1952, 195 F.2d 296, 299, with Commissioner v. Moses, 2 Cir., 1954, 214 F.2d 912, 914.

discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife * * * "

Were the payments to Mrs. Mac-Fadden, the taxpayer, made under a written instrument incident to such divorce or separation?

This case is something like our problem in Feinberg v. Commissioner, 3 Cir., 1952, 198 F.2d 260. It differs in two respects. In this case the obligation to support on the part of the husband lasted as long as the wife lived. It did not in Feinberg. Second, in Feinberg the divorce action was brought within a few months after the agreement was made. We think the first point has some force but is squarely covered by Lerner v. Commissioner, 2 Cir., 1952, 195 F.2d 296; Izrastzoff v. Commissioner, 2 Cir., 1952, 193 F.2d 625. Our own decision in Cox v. Commissioner, 3 Cir., 1949, 176 F.2d 226, states the purpose of § 22(k) in the light of its legislative history.

■ A series of cases in the Second Circuit gives the greatest help upon our problem here for that Court of Appeals has had the issue before it in several varying circumstances. We think two things are made clear in a series of opinions. One is that the legislative purpose here was to put, in the stated situations, the tax burden upon the one who receives and enjoys the income. The second proposition is that we need not go into subjective tests as to whether divorce or separation was contemplated at the time of the separation agreement. As said in the Lerner case, the term concerning the written instrument was designed "only to insure adequate proof of the existence of the obligation when divorce has occurred * * * So where the payments obviously take the place of alimony * * *, although not formally incorporated into the decree, they should not be denied effect under the statute merely because there is no evidence that divorce and settlement were not contemporaneously planned and carried out." 195 F.2d at page 298. The Second Circuit cases which we have found helpful are: Izrastzoff v. Commissioner, supra; Lerner v. Commissioner, supra; Commissioner v. Moses, 2 Cir., 1954, 214 F.2d 912; Holt v. Commissioner, 2 Cir., 1955, 226 F.2d 757.

■ The agreement before us clearly makes provision for payment in lieu of alimony and in pursuance of the husband's marital obligation. This is equally true whether divorce was or was not contemplated at the time the parties made the agreement. And there should be no difference because the final decree was not granted until fourteen years later. To impose the obligation to pay the taxes following the divorce upon the wife is but to carry out the stated intent of Congress to put the burden of tax payment upon the person who has enjoyed the income. We think the conclusion of the Tax Court was correct although we think this Circuit along with the Second and Ninth [2] Circuits are right in making an examination of the facts and the agreement and not probing into the state of mind of either of the parties to the agreement at the time it was made.

The decision of the Tax Court will be affirmed.

2. Commissioner v. Miller, 9 Cir., 1952, 199 F.2d 597.