**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**B. R. and Helen W. DE WITT, Respondents.**

**No. 186, Docket 25921.**

United States Court of Appeals Second Circuit.

Argued Dec. 2, 1959.

Decided April 15, 1960.

———◆———

Charles B. E. Freeman, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee

A. Jackson and A. F. Prescott, Attorneys, Department of Justice, Washington, D. C., on the brief), for petitioner.

Frank J. Maguire, Buffalo, N. Y., for respondents.

Before CLARK, WATERMAN and MOORE, Circuit Judges.

MOORE, Circuit Judge.

The Commissioner of Internal Revenue (the Commissioner) by petition for review appeals from a decision of the Tax Court (31 T.C. 554) holding that taxpayers had overpaid income tax for the calendar year 1953. The Commissioner claims that taxpayer, Byron R. DeWitt, improperly deducted certain payments made to his former wife, Elinor P. De-Witt, allegedly pursuant to a separation agreement and divorce decree and that a deficiency in tax should be assessed.

The facts are not in dispute. Byron R. DeWitt and his wife, Helen W. De-Witt, filed a joint income tax return for 1953. On May 14, 1953 a divorce action was pending in the New York State court between Byron and Elinor. On that date an agreement was entered into between them to "become effective only if and when incorporated into such decrees [i. e., interlocutory and final decrees of divorce]." The "maintenance and support" provision (the subject of this controversy) called for the payment of $30,000 annually "payable in equal monthly installments of Two Thousand Five Hundred ($2,500.00) Dollars in advance beginning as of the 1st day of February, 1953."

At this stage (May 14, 1953) three facts are clear: (1) the $2,500 a month had not, and could not have, been paid "in advance" on February 1, 1953 under the agreement; (2) the agreement was not even in effect; and (3) Byron was still obliged as a matter of law to support his wife and children quite apart from any agreement.

Apparently events progressed as anticipated and on June 4, 1953 an interlocutory decree of divorce was entered, followed by a final decree on September 8, 1953, in which the May 14, 1953 agreement was incorporated. On September 8 Byron paid Elinor eight $2,500 so-called support installments covering February through September. These payments were scarcely "in advance" and obviously not in "support" during this interval because Elinor and the children must have found sustenance from some source other than the then unpaid periodic monthly support payments. During the balance of 1953 Byron made four additional payments totalling $10,000.

In preparing their 1953 income tax returns Byron took a deduction for the $30,000 (actually, because of certain off-setting items, $26,422.59), Elinor included this amount in her return and paid the tax thereon. The Commissioner allowed the $10,000 (four installments) payment and the September 1953 payment of $2,500 and disallowed the balance, $13,922.59. The Tax Court held that all payments made to Elinor were properly includible in her gross income and deductible from Byron's gross income.

Congress, in order to give relief to taxpayers burdened with alimony payments (particularly those in the higher surtax brackets, H.Rep. No. 2333, 77th Cong., 2d Sess., p. 46), has amended the tax laws from time to time to achieve this objective. Prior to 1942 alimony payments were nondeductible from the husband's gross income as personal expenses. To the Internal Revenue Code of 1939 were added provisions that in the case of a wife divorced or legally separated under a decree, periodic payments received subsequent to such decree in discharge of a legal obligation under such decree shall be includible in the wife's gross income and not in that of the husband (Internal Revenue Code of 1939, Sec. 22(k) and Sec. 23(u), 26 U.S.C.A. §§ 22(k), 23(u)).

The language of the statute is clear; the spirit and intent even more so. When a husband's obligation was imposed by a decree of divorce periodic payments thereunder were deductible. The divorce decree changed the status of the parties.

They were no longer man and wife. The legal obligations of maintenance and support resulting from the marital relationship no longer existed. In their stead were substituted contractual and/or court decreed liabilities. Until this new status came into being the husband had to maintain and support the family without any deduction for so doing.

Applying the law here, all normal items of maintenance and support for February 1953 were Byron's responsibility without deduction just as were similar items for January, March and other pre-decree months. The agreement of May 14, 1953 did not change the situation. Periodic obligations by contract and decree were only created on and after September 8, 1953. "An instalment which would not have been deductible if paid at the time when it was due is not made deductible merely because it was paid at a time when it would have been deductible if then due. * * * The nondeductible character of periodic payments due prior to the decree is not changed within the meaning and intent of the statute, and such payments do not become deductible, merely because received in a lump sum subsequent to a decree" (Warley v. McMahon, D.C.S.D. N.Y.1957, 148 F.Supp. 388, 391). The logic and practical interpretation of Congressional intent expressed by Judge Bryan are most compelling. Were the rule otherwise a husband and wife, where their divorce plans were indefinite but their tax-saving ideas more crystallized, could accumulate large sums of allegedly support payments while looking toward their ultimate goal of marital freedom. This situation could be even better exploited in states where disentanglement required years instead of months. Somewhat illustrative is the *"nunc pro tunc"* attempt in Daine v. Commissioner, 2 Cir., 1948, 168 F.2d 449, 451, 4 A.L.R.2d 248.

To accept respondents' argument would be a substantial departure from this court's attempt to look to substance rather than the word form of agreements which would accomplish by legal fiction that which in reality could not have been done. And so here, had Byron paid Elinor $2,500 "in advance" on February 1, 1953, when still married, this would clearly have not been a deductible item. A September payment for a February "periodic payment" would satisfy the demands of the February butcher and baker only by the most legalistic of fictions.

Reversed.

WATERMAN, Circuit Judge (dissenting).

I dissent. I would affirm the Tax Court.

The case hinges upon an interpretation of Section 22(k) of the 1939 Code. The first sentence of that section reads as follows:

"(k) Alimony, etc., income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) *received subsequent to such decree* in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband." (Italics supplied.)

It is stipulated that the payments here in question were received subsequent to the entry of a final decree of divorce. Thus, in the words of Section 22(k), those payments were " * * * received subsequent to such decree in discharge of * * a legal obligation which, because of the marital or family relationship, is imposed upon * * * such husband under such decree * * * " By the express words of the statute the payments made by

respondent here are not to be included in his gross income. To my mind that should settle the matter, for I do not find that the statute is ambiguous or that it needs judicial gloss to make its purport clear.

The majority, however, in reversing the Tax Court has seen fit to amend the statute to add to the phrase " * * * received subsequent to such decree in discharge of a legal obligation under such decree * * * " the further qualification "but only insofar as such payments are intended to satisfy support obligations arising subsequent to such decree." If Congress had intended the test the majority has adopted it could have drawn the statute so as to express it.

But even assuming that the statute is ambiguous and that consideration of matters outside the statutory language is required in order to clarify its meaning, I can discover no justification for the majority's holding. Surely the Tax Court's interpretation is more in keeping with the principle of Section 22(k)—that the tax burden should be placed upon the person who receives and enjoys the income. MacFadden v. C. I. R., 3 Cir., 1957, 250 F.2d 545, certiorari denied 356 U.S. 968, 78 S.Ct. 1007, 2 L.Ed.2d 1074. The statutory requirement that payments the recipient must include in reported income shall be payments made and received subsequent to a decree of divorce does not indicate an intent that the payments be made only for obligations which would have occurred subsequent to the date of the decree. Rather it indicates that there must be adequate proof of divorce before the husband's deduction is allowed, just as "the term 'written instrument incident to such divorce' was designed * * * only to ensure adequate proof of the existence of the obligation when divorce has occurred * * * " Lerner v. C. I. R., 2 Cir., 1952, 195 F.2d 296, 298. Customarily husband and wife can determine from the stipulation submitted by them the amount of alimony payments to be imposed by a divorce decree; and

hence, under the Tax Court's interpretation of Section 22(k), there is no possibility for tax avoidance other than that which the section obviously permits.