EUGENE F. EMMONS AND MARY J. EMMONS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76849. Filed July 28, 1961.

*Henry C. Harvey, Esq.*, for the petitioners.
*Buckley D. Sowards, Esq.*, for the respondent.

## OPINION.

FORRESTER, *Judge:* Respondent has determined deficiencies in petitioners' income tax for the years 1952 and 1954 as follows:

| Year | Deficiency |
| --- | --- |
| 1952 | $3,428.32 |
| 1954 | 3,367.14 |
| | 6,795.46 |

The issue for our consideration is whether payments of $9,000 in each of the years in issue were properly deductible as alimony payments, or whether respondent was correct in treating only $4,000 of each payment as alimony.

All of the facts have been stipulated, are so found, and are incorporated herein by reference. Those necessary to an understanding of our inquiry are recited below.

Petitioners Eugene F. Emmons and Mary J. Emmons are husband and wife residing in Sandusky, Ohio. They filed joint returns for the years 1952 and 1954 with the district director of internal revenue at Toledo, Ohio. Petitioner Mary J. Emmons is involved in this proceeding solely because of the filing of joint returns.

On October 4, 1948, Eugene F. Emmons (hereinafter referred to as petitioner) and Margaret A. Emmons (hereinafter referred to as Margaret) were man and wife. Two daughters had been born of this marriage, Katharine E. Emmons and Janet R. Emmons, born January 29, 1927, and May 4, 1928, respectively. The daughters were adults at all times during the taxable years involved.

On October 4, 1948, in anticipation of the dissolution of their marital bonds, petitioner and Margaret entered into a written contract or agreement (hereinafter called the contract) providing in part:

### CONTRACT

This contract or agreement, made and entered into this 4th day of October, 1948, by and between E. F. Emmons, hereinafter designated party of the first part, and Margaret Emmons, hereinafter designated party of the second part,

### WITNESSETH:

That whereas the parties hereto have been separated for several years and have not lived together as man and wife, and whereas the parties find it impossible to effect a reconciliation,

And whereas the party of the second part intends to file a petition for divorce against the party of the first part,

Now THEREFORE, if said petition for divorce is filed and said divorce is granted, the parties desiring to settle their property, alimony and support differences, do hereby agree with each other to the following, which agreement shall be made part of any divorce decree, providing there is a decree and providing same is approved by the Common Pleas Court of Erie County:

*FIRST.* The party of the first part agrees to pay to the party of the second part the sum of Thirty-two Thousand Five Hundred Dollars ($32,500.00) cash.

*SECOND.* The party of the first part agrees to pay to the party of the second part the sum of Ninety-eight Hundred Dollars ($9800.00) per year for the first eight years after a divorce is granted, payable in twelve equal monthly installments, the first payment to begin the first of the month if and when a divorce decree is granted, and agrees to pay the sum of Seventy-three Hundred Dollars ($7300.00) per year for the ninth year after a divorce is granted, payable in twelve equal monthly installments, and the sum of Forty-eight Hundred Dollars ($4800.00) for the tenth year after a divorce is granted, payable in twelve equal monthly installments, which sums shall represent permanent alimony over said ten-year period. In the event of the death of the party of the second part before the expiration of said ten-year period, said payments shall cease. * * *

\* \* \* \* \* \* \*

*FIFTH.* The party of the first part agrees with the party of the second part that he will simultaneously with the signing of this agreement, place in escrow, eleven thousand eight hundred forty-four (11,844) shares of common stock of The Union Chain and Manufacturing Company, with Murray & Murray as escrow agents, said stock certificates representing said shares to be signed in blank with signature guaranteed by The Citizens Banking Company of Sandusky, Ohio, under the following terms, conditions and provisions: [Elaborate provisions for the stock were set forth, with the residual beneficial interest being primarily in Katharine and Janet.] * * *

After entering into the contract, petitioner and Margaret executed, on October 4, 1948, a written contract or agreement entitled "Supplemental" (hereinafter called supplemental contract). This instrument provided in part:

This supplemental contract or agreement, made and entered into this 4th day of October, 1948, by and between E. F. Emmons, hereinafter designated party of the first part, and Margaret Emmons, hereinafter designated party of the second part,

WITNESSETH:

That whereas the parties have entered into a contract involving a property and alimony settlement as a result of divorce proceedings to be filed, and whereas said contract provides that Margaret Emmons shall receive the sum of Ninety-eight Hundred Dollars ($9800.00) per year for a period of eight years, and the sum of Seventy-three Hundred Dollars ($7300.00) for the ninth year after a divorce is granted, and the sum of Forty-eight Hundred Dollars ($4800.00) during the tenth year after a divorce is granted,

Now THEREFORE, the parties hereto do hereby agree that in respect to said sums of $9800.00 for eight years, $7300.00 for the ninth year, and $4800.00 for the tenth year, that same shall be used as follows:

1. So long as Margaret Emmons does not remarry, she shall be entitled to the sum of Forty-eight Hundred Dollars ($4800.00) per year as her exclusive property for each and every year of the 10-year period in question that she does not remarry.

2. For the first eight years after the divorce is granted, she shall expend for the care, support and welfare of Katharine Emmons, daughter of the parties, so much money as is necessary up to the sum of Twenty-five Hundred Dollars per year ($2500.00), and such sum over and above that which is necessary for the support and welfare of said Katharine Emmons up to the sum of $2500.00

per year, shall be placed in a savings account in the name of Katharine Emmons, or shall be used to purchase United States Savings Bonds or other United States securities in the name of Katharine Emmons.

3. For the first nine years after the divorce is granted, Margaret Emmons shall expend for the care, support and welfare of Janet Emmons, daughter of the parties, so much money as is necessary up to the sum of Twenty-five Hundred Dollars ($2500.00) per year, and such sum over and above that which is necessary for the support and welfare of said Janet Emmons up to said sum of Twenty-five Hundred Dollars ($2500.00) per year, shall be placed in a savings account in the name of Janet Emmons, or shall be used to purchase United States Savings Bonds or other United States securities in the name of Janet Emmons.

4. In the event that Margaret Emmons does remarry any time during the ten-year period when said payments of $9800.00, $7300.00 and $4800.00 are being made, then the party of the first part agrees that he is bound by his original agreement to continue to make said payments during the ten year period to said Margaret Emmons, but the said Margaret Emmons agrees that she will after any such remarriage, use the entire $9800.00 for the support, maintenance and welfare of the two daughters of the parties, Katharine Emmons and Janet Emmons, and any part of said payments not used for the support and maintenance of said daughters will be placed in savings accounts in the names of Katharine Emmons and Janet Emmons, equally, or be used to purchase equal amounts of United States Savings Bonds or other United States securities for said Katharine Emmons and Janet Emmons, excepting and providing however, that even though Margaret Emmons should remarry, and conditions are such that she needs the above-referred to $4800.00 per year for her personal support and maintenance she then shall have the right to use said $4800.00 for her exclusive support and maintenance.

5. It is further agreed by and between the parties that in the event that Margaret Emmons should die any time before either Katharine Emmons or Janet Emmons reaches the age of thirty years, that the party of the first part will continue to pay to each of said daughters the sum of Twenty-five Hundred Dollars ($2500.00) per year until said child reaches the age of thirty years.

5a. And, should a daughter die before attaining thirty years of age, the payments required of the Party of the First Part shall thereafter be reduced by $2500.00 per year.

Also on October 4, 1948, Margaret filed a petition for divorce against petitioner in the Court of Common Pleas of Erie County, Ohio. Pursuant thereto, Margaret was granted a divorce by that court by journal entry made November 19, 1948, and filed November 22, 1948. Pertinent parts of the journal entry follow:

The Court coming on further to consider the evidence finds from same that the Defendant has been guilty of extreme cruelty and that by reason thereof the Plaintiff is entitled to a divorce as prayed for in her petition.

It is therefore, ORDERED, ADJUDGED and DECREED that the marriage contract heretofore existing between the said Margaret A. Emmons and Eugene F. Emmons, be and the same hereby is dissolved and both parties are released from the obligations of same.

The Court further finds from the evidence that the parties have entered into a cash settlement as a part property settlement, and said cash settlement is hereby approved by this Court.

    \*       \*       \*       \*       \*       \*       \*

It is further ORDERED, ADJUDGED and DECREED that the Defendant be and he is hereby ordered to pay, as alimony, to the Plaintiff herein, the sum of Ninety-eight Hundred Dollars ($9800.00) per year for the first eight years beginning with the 1st day of December, 1948, and payable to the Clerk of this Court in equal monthly installments.

It is further ORDERED, ADJUDGED and DECREED that after the eight years in question, the Defendant be and he is hereby required to pay to the Plaintiff herein, as alimony, and payable to the Clerk of this Court, the sum of Seventy-three Hundred Dollars ($7300.00) for the ninth year, payable in twelve equal monthly installments.

It is further ORDERED, ADJUDGED and DECREED that the Defendant be and he is hereby ordered to pay to the Plaintiff herein, as alimony, and payable to the Clerk of this Court, the sum of Forty-eight Hundred Dollars ($4800.00) for the tenth year, payable in twelve equal monthly installments.

It is further ORDERED, ADJUDGED and DECREED that the Defendant, after having paid all of the payments for the ten-year period, shall not be required to pay any alimony after the said ten-year period.

It is further ORDERED, ADJUDGED and DECREED that if, at any time prior to the expiration of the ten-year period, the Plaintiff herein shall die, then the payments shall immediately cease.

The provisions of the contract relating to the Union Chain and Manufacturing Company stock were specifically incorporated into the divorce decree by reference.

On December 28, 1949, the Court of Common Pleas of Erie County, Ohio, made an entry in the divorce case mentioned above correcting *nunc pro tunc* the journal entry of November 22, 1948. None of the changes made affect issues now before the Court.

On December 30, 1949, petitioner and Margaret executed the following instrument:

### AMENDMENT TO SUPPLEMENTAL CONTRACT

This amendment to supplemental contract made on the 4th day of October, 1948 by and between E. F. Emmons as party of the first part and Margaret Emmons as party of the second part, is effective as of the first day of December, 1949, and shall continue to be in full effect and force in law until the 31st day of December, 1958, and

#### WITNESSETH:

That whereas under the supplemental agreement the party of the first part is required to make monthly payments in the amount of Eight Hundred Sixteen Dollars and Sixty-seven Cents ($816.67) providing the said sum does not represent more than fifty per cent of his net income, and

Whereas said amount has been due and payable due to an error in the original Journal Entry in the case of Margaret A. Emmons vs. Eugene F. Emmons of November 22, 1948, and whereas said error has been corrected by a Nunc Pro Tunc order of December 28, 1949,

Now THEREFORE, the parties hereto do hereby agree as follows:

The payments hereafter, starting with the month of January, 1950, shall be Seven Hundred Fifty Dollars ($750.00) monthly instead of Eight Hundred Sixteen Dollars and Sixty-seven Cents ($816.67), and shall continue in keeping with the supplemental contract heretofore entered into by and between the parties.

And whereas by Item 4 of the supplemental contract, Margaret Emmons, whose

name is now Margaret Emmons Dilatush, is required to place said money in a savings account for Katharine Emmons and Janet Emmons or to purchase United States Securities for Katharine Emmons and Janet Emmons, now therefore by this amendment to said supplemental contract said Item 4 is hereby amended so that the said Margaret Emmons Dilatush is authorized to pay out of the sum that she receives for Katharine Emmons and Janet Emmons the income tax that she is required to pay on same, and to pay the balance over equally to said Katharine Emmons and Janet Emmons each month, and by paying said money over to the said daughters of the parties herein, she shall be relieved from any further liability in connection with Item 4 of said supplemental contract.

In all other respects, said supplemental contract of October 4, 1948, shall remain in full effect and force.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands this 30th day of December, 1949.

On July 28, 1958, petitioner filed a charge of contempt against Margaret in the divorce proceeding. On the same day the court dismissed the charge by the following journal entry:

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, OHIO

| | |
|---|---|
| Margaret A. Emmons,<br>318 Lawrence Street,<br>Sandusky, Ohio<br>Plaintiff<br><br>—vs—<br><br>Eugene F. Emmons,<br>c/o The Union Chain & Manufacturing Co.<br>West Monroe Street,<br>Sandusky, Ohio<br>Defendant | No. 26701<br>JOURNAL ENTRY<br>(Filed: July 28, 1958) |

This day came Eugene F. Emmons, the defendant herein, and filed with the Clerk of this Court, a charge in writing against the plaintiff, Margaret A. Emmons, now remarried and known as Margaret A. Dilatush, alleging that at or about the time of the order, decree and judgment of divorce made and entered herein, the plaintiff and defendant entered into a series of writings relating to matters of property settlement and alimony, entitled, respectively, CONTRACT, SUPPLEMENTAL CONTRACT, and AMENDMENT TO SUPPLEMENTAL CONTRACT: and that the substance of said CONTRACT was thereafter embodied in the decree and judgment of divorce made and entered herein. Said charge further alleges that the plaintiff has used and expended moneys paid to her by the defendant as and for alimony pursuant to such decree and judgment for purposes other than those prescribed by said SUPPLEMENTAL CONTRACT and AMENDMENT TO SUPPLEMENTAL CONTRACT, wherefore defendant asks that a rule issue to plaintiff, Margaret A. Dilatush, to appear and answer why she should not be punished as and for a contempt of this court.

The Court, on careful examination of the pleadings and record in this cause, finds no reference to any such writings as the SUPPLEMENTAL CONTRACT or AMENDMENT TO SUPPLEMENTAL CONTRACT, but that only the writing entitled CONTRACT has been substantially incorporated into the final orders made herein. The Court accordingly finds that there is *no existing order, judgment, or decree heretofore made* in this cause which imposes any legal obligation on the plaintiff to make any payments stipulated or provided for in said

SUPPLEMENTAL AGREEMENT or the AMENDMENT TO SUPPLEMENTAL AGREEMENT.

The Court accordingly finds that, since the charge made against the plaintiff is predicated solely upon payments alleged to have been made in contravention of the terms of said SUPPLEMENTAL AGREEMENT and AMENDMENT TO SUPPLEMENTAL AGREEMENT, and that neither of said writings has any status or effect *in this cause*, no order to appear and answer should issue against the plaintiff, Margaret A. Dilatush, herein. The charge filed by the defendant is accordingly hereby dismissed at his costs, with exceptions saved to him. [Emphasis supplied.]

/s/　H. E. Culbertson
*Common Pleas Judge*

Respondent's notice of deficiency was mailed to petitioners on August 20, 1958.

In 1952 and 1954 petitioner had paid the sums of $9,000 to Margaret, who was then remarried and known as Margaret A. Dilatush. Respondent allowed only $4,000 per year as a deduction for alimony.

The issue presented herein is whether or not the entire $9,000 paid by petitioner during each taxable year in issue to Margaret is fully deductible by him pursuant to section 23(u) of the Internal Revenue Code of 1939[1] and section 215[2] of the Internal Revenue Code of 1954.[3] These payments are fully deductible if they are includible in Margaret's gross income under section 22(k) and section 71(a)(1).[4]

Petitioner's first contention is that the supplemental contract and the amendment to supplemental contract were merged into or superseded by the divorce decree and were therefore no longer enforcible separate from the decree, nor were they enforcible under the decree as evidenced by the dismissal of the contempt proceedings on July 28, 1958.[5] Since Margaret would thus be freed of the obligation to spend

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

　*　　　*　　　*　　　*　　　*　　　*　　　*

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[2] Substantially the same as section 23(u), footnote 1, *supra*.

[3] All of the statutory language applicable to 1952 and 1954 is substantially the same. Hereafter references to sections 22 and 23 refer to the 1939 Code, and references to sections 71 and 215 to the 1954 Code.

[4] SEC. 22. GROSS INCOME.—

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband, * * *

[5] Petitioner seems to argue that the obligations have vanished. If "merged," they still cannot be enforced pursuant to the decree, nor apart from it. Perhaps petitioner feels that the decree extinguished these obligations, but we find no authority for the termination *sub silentio* by a divorce decree of obligations existing under a separate and subsisting contract.

(or hold in trust) for each daughter $2,500 of the annual payments, petitioner concludes that the $5,000 provided for the daughters was alimony or in lieu thereof, and paid for and in behalf of Margaret. He relies on section 39.22(k)–1(d), Regs. 118,[6] and section 1.72–1(e), Income Tax Regs.[7]

The inclusion in the wife's gross income and the corresponding deduction from the husband's gross income under the above statutes is limited to "payments in the nature of or in lieu of alimony or an allowance for support as between divorced or legally separated spouses." H. Rept. No. 2333, 77th Cong., 2d Sess., p. 71 (1942); S. Rept. No. 1631, 77th Cong., 2d Sess., p. 83 (1942), 1942–2 C.B. 428, 568. The phrase "in lieu of alimony" is but another illustration of the principle that the tax burden is imposed upon the person enjoying the income. *MacFadden* v. *Commissioner*, 250 F. 2d 545 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court, certiorari denied 356 U.S. 968 (1958). See also *Griffiths* v. *Commissioner*, 308 U.S. 355 (1939). The parties agree that if Margaret had command and unfettered dominion and control over the $9,000 payments, petitioner is entitled to deductions therefor.

Whether or not the restrictions imposed upon Margaret's use of the payments (by the supplemental contract and its amendment) were valid depends on Ohio law. The Ohio courts have frequently considered the effect of a divorce decree upon a prior separation agreement. The syllabus[8] of *Newman* v. *Newman*, 161 Ohio St. 247, 118 N.E. 2d 649 (1954), states:

An alimony decree based on an agreement between the parties is not subject to modification by a court after term in the absence of mistake, misrepresentation or fraud and in the absence of a reservation of jurisdiction with reference thereto. (Law v. Law, 64 Ohio St., 369, approved and followed).

Accord, *Mozden* v. *Mozden*, 162 Ohio St. 169, 122 N.E. 2d 295 (1954); *Dailey* v. *Dailey*, 171 Ohio St. 133, 167 N.E. 2d 906 (1960).

It is clear in Ohio that a divorce decree *incorporating* a separation agreement supersedes such agreement, and thereafter the obligations are imposed only by the decree and are enforcible thereunder. *Holloway* v. *Holloway*, 130 Ohio St. 214, 198 N.E. 579 (1935); *McPherson* v. *McPherson*, 153 Ohio St. 82, 90 N.E. 2d 675 (1950); *Robrock* v.

---

[6] Sec. 39.22(k)–1(d). *Payments for support of minor children.* * * * Except in cases of a designated amount or portion for the support of the husband's minor children, periodic payments described in section 22(k) received by the wife for herself and any other person or persons are includible in whole in the wife's income, whether or not the amount or portion for such other person or persons is designated.

[7] Except for references to different corresponding sections of the Code, the regulations are identical.

[8] The syllabus of a case decided by the Supreme Court of Ohio constitutes the official opinion of that court and its statement of the law applied in the case. *Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), rehearing denied 343 U.S. 917; *State ex rel. Canada* v. *Phillips*, 168 Ohio St. 191, 151 N.E. 2d 722 (1958).

*Robrock*, 167 Ohio St. 479, 150 N.E. 2d 421 (1958). In the *Holloway* case, the court said (130 Ohio St. at 216) :

> A decree which incorporates an agreement is a decree of court nevertheless, and as soon as incorporated into the decree the separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforcible as such. * * *

However, it is equally clear that if the divorce decree does not incorporate or refer to the separation agreement, nor contain any order incompatible with such agreement, the decree works no merger or termination.[9] *Tefft* v. *Tefft*, 73 Ohio App. 399, 54 N.E. 2d 423 (1943) ; *Mendelson* v. *Mendelson*, 123 Ohio St. 11, 173 N.E. 615 (1930).

The Ohio courts have not had occasion to consider the intermediate situation in which the agreement is approved by but not incorporated into the divorce decree. The prevailing rule in other jurisdictions is that in such cases the question of merger is determined by ascertaining the intent of the parties and of the court. *Flynn* v. *Flynn*, 42 Cal. 2d 55, 265 P. 2d 865 (1954) ; *Flicker* v. *Chenitz*, 55 N.J. Super. 273, 150 A. 2d 688 (1959) ; *Freeman* v. *Sieve*, 323 Mass. 652, 84 N.E. 2d 16 (1949) ; 17A Am. Jur., Divorce and Separation, sec. 907, or the intent of the court alone. *Rigdon* v. *Rigdon*, 347 P. 2d 43 (Ore. 1959). The rule was stated in *Flynn* v. *Flynn*, 265 P. 2d at 866 :

> In any of these situations it is first necessary to determine whether the parties and the court intended a merger. If the agreement is expressly set out in the decree, and the court orders that it be performed, it is clear that a merger is intended. * * * In the absence of an express order to perform all or part of the agreement, it may be difficult to determine whether or not a merger was intended. * * *

We conclude that neither the supplemental contract nor the amendment to the supplemental contract was incorporated or merged into or superseded by the divorce decree. The decree specifically incorporates the clauses in the contract pertaining to the 11,844 shares of stock, but merely "approves" the remaining provisions. Nowhere in the decree, however, is there a reference to or incorporation of the supplemental contract or the amendment thereto. We therefore conclude that these latter instruments were enforcible apart from the decree.

Supporting this conclusion are the events occurring subsequent to the entry of the divorce decree. The amending of the supplemental contract is very significant.[10] As we have indicated, the decree could

---

[9] The provisions of the supplemental contract are not incompatible with the decree, but merely provide how the payments received by Margaret are to be allocated. The decree labeled the payments "alimony," and although the ultimate use to which they were put was not for the sustenance of Margaret, the use of the $5,000 for the daughters is consistent with the payment of the identical sum to her.

[10] The *nunc pro tunc* order of December 28, 1949, merely eliminated references to a period of 10 years, apparently to conform to the periodic payments requirement of section 22(k).

have been modified by the court insofar as it was due to mistake. *Newman* v. *Newman*, *supra*. However, the parties corrected an "error" by amending the supplemental contract itself. This can only indicate that they considered the supplemental contract to be valid and enforcible as of December 30, 1949, and we agree that it was. Also, the reduced payments agreed to in the amendment were paid and received without objection in the taxable years involved here.

The attempt of petitioner to have Margaret cited for contempt does not alter our view. In its dismissal of the charge, the court that granted the divorce found that the supplemental contract and the amendment to supplemental contract were neither considered by the court when it granted the 1948 divorce nor incorporated into the decree.[11] We believe that petitioner's proper remedy (if remedy was actually desired) was to sue for enforcement of the supplemental contract itself, and this view is supported by the careful language of the journal entry of July 28, 1958, which we have emphasized.

We find that during the taxable years at issue Margaret was bound by the provisions of the supplemental contract and the amendment thereto.

Insofar as the Court of Common Pleas of Erie County, Ohio, was concerned petitioner was obligated to pay Margaret $9,800 in each year in issue as alimony. However, he and Margaret had made further agreements between themselves, unknown to that court, which were embodied in the supplemental contract and the amendment to supplemental contract. They provided (1) for a yearly reduction of $800 in the total payments required of petitioner; (2) that Margaret (or petitioner if Margaret died before she could complete the task) would expend for support or hold in trust to the extent not needed for such support $2,500 annually for each daughter; (3) that to the extent Margaret was taxed on such $2,500 payments, the tax could be paid therefrom and the amounts expended or held in trust for each daughter would be correspondingly reduced; and (4) that petitioner's required payments would be reduced by $2,500 upon the death of a daughter before reaching age 30.

It is evident that these "secret" agreements achieved results normally desired by and mutually beneficial to parents in the positions of petitioner and Margaret. The only apparent advantage obtainable under the complex path chosen was the taxation of the $5,000 each year at Margaret's surtax rate rather than at that of petitioner.

---

[11] The petition to cite Margaret for contempt and the journal entry embodying the court's decision to deny the petition were filed the same day, a rather amazing occurrence in this age of crowded court dockets. Considering that petitioner was probably aware of the pending notice of deficiency (which was mailed approximately 3 weeks later) we feel that the attempt to cite Margaret for contempt was made to assist petitioner in his contention before us that the supplemental contract, as amended, is unenforcible.

Petitioner attaches great weight to the language of the decree calling the entire payments "alimony." For purposes of sections 22(k) and 71(a), the fact that a payment is labeled "alimony" is not controlling. The reports are replete with unsuccessful attempts to achieve a desired result by choosing suitable descriptive terms for the transactions involved. Cf. *Gregory v. Helvering*, 293 U.S. 465 (1935); *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945). Diffusing the disguise of mere formalisms which exist primarily to affect tax liabilities, we must ascertain the substantive nature of that part of the payments made for the support of Katharine and Janet.

The payments of $5,000 were specifically designated for the daughters. They were not made in lieu of subsistence for Margaret, nor did she receive any economic benefit therefrom. She was merely a conduit for payments from petitioner to his daughters. Such payments were solely for them and on their behalf, hence not alimony nor in lieu thereof. *Mandel v. Commissioner*, 229 F. 2d 382 (C.A. 7, 1956), affirming 23 T.C. 81 (1954). Since they did not inure to Margaret's benefit, they were not includible in her income nor deductible by petitioner.

Petitioner relies on cases finding payments to third persons (other than minor children of the payor) taxable to the wife and deductible by the husband. In all of these cases the payments were on behalf of and constituted an economic benefit to the wife, either by satisfying a moral obligation she assumed [12] or because she was not legally obligated to pay the specific amounts to such third persons.[13]

In the instant case Margaret is akin to a trustee of a support trust, and has no right to use the disputed payments. The intricate pattern of agreements leads us to view the disputed payments as emanating from petitioner and being specifically directed towards his daughters. The mere fact that actual payments passed through the hands of Margaret is insufficient to alter the tax consequences of payments from a father to his daughters. *Mandel v. Commissioner*, *supra*.

Our conclusion that the payments of $2,500 annually to Margaret for each daughter were not alimony or in lieu of alimony renders sections 22(k) and 23(u) of the 1939 Code and sections 71(a)(1) and 215 of the 1954 Code inapplicable. It is therefore unnecessary for us to discuss whether the supplemental contract and the amendment thereto were incident to the divorce.

*Decision will be entered for the respondent.*

---

[12] *Robert Lehman*, 17 T.C. 652 (1951).
[13] *Robert Wood Johnson*, 10 T.C. 647 (1948).