Robert P. Garvey and Jo Ann Garvey v. Commissioner.
Garvey v. Commissioner
Docket No. 2493-65.
United States Tax Court
T.C. Memo 1966-221; 1966 Tax Ct. Memo LEXIS 63; 25 T.C.M. (CCH) 1135; T.C.M. (RIA) 66221; October 5, 1966
E. J. McCarthy, for the petitionesr. James T. Finlen, Jr., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1962 in the amount of $1,398.28. The only issue for determination is whether the amount of $6,500, paid by petitioner Robert P. Garvey to or for the benefit of his ex-wife, was properly deductible by him from gross *64 income within the provisions of section 215 of the Internal Revenue Code of 1954. 1a
Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Robert P. Garvey (hereinafter referred to as petitioner) and Jo Ann Garvey, husband and wife, were residents of South Sioux City, Nebraska. They filed a joint Federal income tax return on the cash basis for the taxable year 1962 with the district director of internal revenue, Omaha, Nebraska. Petitioner had previously been married, on June 26, 1947, to Lucille M. Garvey (hereinafter referred to as Lucille). On October 2, 1961, petitioner instituted a suit for divorce against Lucille. At the time of the divorce, they possessed the following items of property: Certain realty located in South Sioux City, Household furnishings, Joint checking account, Interest in a fruit and produce business in Minneapolis, Minnesota, Two automobiles, 12 shares of American Telephone & Telegraph stock, A few shares *65 of Cessland Oil stock The A.T. & T. stock had been acquired by Lucille through payroll deductions as an employee of Northwestern Bell Telephone Company between 1956 and 1960. In addition, petitioner had a part interest in the Garvey Manufacturing Company and owned and operated a stump removal and landscaping business, both located in South Sioux City. The record does not disclose the value of any of the foregoing items. During the pendency of the divorce action, petitioner and Lucille undertook negotiations relating to the termination of their marriage. At first, Lucille contested petitioner's efforts to obtain a divorce. Initially, he had offered Lucille $10,000 cash if she would give him a divorce. Under this arrangement, he would also have retained all of the other property they possessed. Lucille refused. Eventually, she agreed to the divorce and the parties orally agreed upon a division of their property whereby Lucille would receive the 12 shares of A.T. & T. stock, the Cessland Oil stock, $6,000 cash, and all household goods. Petitioner also agreed to pay her attorney's fees, which amounted to $500. Lucille later agreed to deferred payments of a portion of the cash she *66 was to receive because at that time petitioner did not have $6,000 in cash. On February 12, 1962, petitioner and Lucille executed a document entitled "AGREEMENT AND PROPERTY SETTLEMENT," which provided, in part, as follows: [The] parties * * * are desirous of having a property settlement without the intervention of the court; It is therefore hereby agreed by and between the parties to said action that the said Robert P. Garvey shall turn over to the defendant, Lucille M. Garvey, the following property, to-wit: all A.T. & T. stock and all Cessland Oil Stock, together with all household goods now owned by the parties; the plaintiff will further grant to the defendant the use of a Studebaker automobile for a reasonable time and until the defendant leaves South Sioux City, Nebraska. In addition thereto the plaintiff agrees to pay to the defendant, as permanent alimony, the sum of Six Thousand Five Hundred Dollars ($6,500.00), payable as follows: the sum of $3,500 cash, payable as follows - $500.00 to Mark J. Ryan for defendant's Attorney fees, and $3,000.00 to the defendant, and the balance of $3,000.00 payable at the rate of $300.00 per month for a period of ten months commencing *67 March 1, 1962; and in addition thereto the plaintiff will pay all present household bills of the parties. In consideration whereof, the defendant, Lucille M. Garvey, hereby agrees to sign a joint Federal Income Tax Return with the plaintiff, Robert P. Garvey, and will also execute a Quit Claim Deed to the plaintiff for Lots 1 and 2, Block 24, Railway Addition, Dakota County, Nebraska, commonly known as the 1st Railway Addition to the City of South Sioux City, Dakota County, Nebraska; also the East one-third of the North Fifteen (15) acres of the Northwest quarter of the Southeast one-quarter, all in Section 28, Township 29, North of Range 9, East of the 6th P.M., all in South Sioux City, Dakota County, Nebraska. Beginning February 12, 1962, petitioner made all payments pursuant to the terms of the "AGREEMENT AND PROPERTY SETTLEMENT." On February 26, 1962, the District Court of Dakota County, Nebraska, entered a decree wherein it granted petitioner a divorce from Lucille. The decree also specifically incorporated the agreement of the parties entitled "AGREEMENT AND PROPERTY SETTLEMENT." The decree concluded with a paragraph stating that - This decree shall not be final for *68 any purpose except appeal for the period of six months from this date and neither party shall have the right to remarry within said period. Petitioner, on his 1962 Federal income tax return, claimed a deduction for the payments made to or for the benefit of Lucille during 1962, in the amount of $6,500. Respondent, in his statutory notice of deficiency, determined that petitioner was not entitled to any deduction for such payments under section 215 and, accordingly, determined that petitioner's taxable income be increased by $6,500. Opinion The sole issue for determination is whether the payments made by petitioner to or for the benefit of Lucille were properly deductible by him under section 215. [2] To be deductible under section 215, the payment by the petitioner must have been properly includable in Lucille's gross income under section 71. [3] The basic prerequisites of section 71 are: (1) That the payments are in discharge of a legal obligation which is imposed on the payor because of the marital or family relationship in recognition of the general obligation of support and (2) that they are periodic. In short, to qualify under section 71, payments must be both periodic and *69 in the nature of alimony. Initially, therefore, we must determine whether the payments are in the nature of alimony or are merely to effect a property settlement between the parties. Petitioner contends that these payments were in the nature of alimony while respondent urges that they were a part of the parties' division of their marital property. *70 This determination is primarily a question of fact to be decided after a consideration of all the relevant circumstances. Elizabeth H. Bardwell, 38 T.C. 84, (1962), affd. 318 F. 2d 786 (C.A. 10, 1963). Nor is this Court limited to the written agreement of the parties where, as here, it is not without ambiguity as to the nature of the payments.[4]Riddell v. Guggenheim, 281 F. 2d 836 (C.A. 9, 1960); Ann Hairston Ryker, 33 T.C. 924 (1960). Nor is the fact that the parties place a particular label upon the payments decisive of the issue. Piel v. Commissioner, 340 F. 2d 887 (C.A. 2, 1965), affirming a Memorandum Opinion of this Court; John Sidney Thompson, 22 T.C. 275 (1954). The burden of proof is, of course, on petitioner to demonstrate that he is entitled to the deduction claimed. We are of the opinion that petitioner has failed to show that the payments were intended *71 to be alimony. On the contrary, we have found that the record indicates that the parties intended a property settlement and that the cash payments were part of this division of marital property. Primarily, the agreement called for the reecipt of this money in addition to certain properties, "[in] consideration whereof" Lucille agreed to give up any interest she might have in certain realty as well as agreeing to sign a joint income tax return with petitioner. It appears from this form and language that the parties contemplated a property settlement in which each would receive part of the total marital estate. This conclusion is strongly supported by the nature of the negotiations between petitioner and Lucille leading up to the final written agreement. The record reveals uncontradicted testimony that petitioner's original offer was to give Lucille $10,000 in exchange for not contesting the divorce and in addition for allowing petitioner to keep all the other property. When Lucille refused, petitioner orally made a second offer whereby Lucille would take the A.T. & T. stock, which she had acquired earlier, taking title in their joint names, the Cessland Oil stock, the household goods, *72 and $6,000 cash. In addition, petitioner agreed to pay her attorney's fee. In drawing up the final written agreement, the provision for $6,000 cash was altered to provide for a present payment of $3,000 and the balance of $3,000 to be payable at the rate of $300 per month for a period of ten months. The record reveals that the reason for the deferral of these payments was not to provide for Lucille's support but rather to accommodate petitioner's lack of cash. Significantly, petitioner has presented no evidence to show that the cash was intended to be in exchange for his obligation to support Lucille; nor has he shown that the cash payments were required other than to effect an equitable division of marital property. Though neither the agreement nor the testimony reveals the relative values of the properties, any deficiency in the record must be weighed against the petitioner because he bears the burden of proof. In addition, the fact that the agreement itself called for the payment of a specified amount ($6,500) to Lucille, which was payable in all events and over such a short span of time (10 months) leads us to believe that these payments were not intended to be in the nature *73 of alimony. See Campbell v. Lake, 220 F. 2d 341 (C.A. 5, 1955). On the record before us, therefore, we are of the opinion that these payments were not in discharge of a legal obligation which was imposed on petitioner because of the marital or family relationship and are not deductible by petitioner under section 215. In view of our holding that such payments were not in the nature of alimony, we find it unnecessary to consider the second requirement under section 71, that the payments be periodic. Decision will be entered for the respondent. Footnotes
1a. All section references are to the Internal Revenue Code of 1954 unless otherwise noted.↩
2. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * * ↩
3. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * *
(3) Decree for Support. - If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.↩
4. Though the agreement was entitled "AGREEMENT AND PROPERTY SETTLEMENT" and the avowed purpose was stated to be that "the parties * * * are desirous of having a property settlement," the cash payments were labeled "permanent alimony."↩