**Gerard PIEL and Eleanor Jackson Piel, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 19, Docket 28852.

United States Court of Appeals
Second Circuit.

Argued Oct. 15, 1964.

Decided Jan. 25, 1965.

888

Eleanor Jackson Piel, New York City (Donner & Piel, New York City, of counsel), for petitioners.

Jeanine Jacobs, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Department of Justice, Washington, D. C., of counsel), for respondent.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge.

Petitioners, Gerard Piel and Eleanor Jackson Piel, seek to review a decision of the Tax Court upholding a deficiency in their income tax for 1957. This case again presents the troublesome question whether a taxpayer may take as a tax deduction from yearly income under the alimony provisions of the Internal Revenue Code of 1954 premiums paid toward life insurance on his own life for the benefit of his former wife. The facts are not seriously in dispute and may be summarized as follows.

In 1955 Gerard Piel was divorced from his then wife, Mary, in Nevada. A previously executed separation decree was incorporated into the Nevada divorce decree. Under the decree Gerard was to make periodic monthly alimony payments to Mary so long as she lived or remained unmarried. These payments were based on a sliding scale depending on Gerard's income. The minimum amount due in any calendar year was $3,750 if Gerard's income was $15,000 or less, and the maximum was $6,250, if Gerard's income was over $30,000, plus ten percent of the "amount in excess of $30,000." Gerard also agreed to maintain $45,000 of insurance on his life, designating Mary as the prime beneficiary. The decree further required him to pay the premiums to maintain these policies, but provided that the premiums paid each year be credited up to $1,200 per annum against his total alimony obligation for that year. Under this formula one-twelfth of Gerard's total premium obligation per annum was deducted from the required monthly alimony payments. If he failed to make a premium payment as required, Mary was entitled to make the payment and to hold him accountable for the money advanced. Finally, the two children of the dissolved marriage were named as contingent beneficiaries of the insurance proceeds but they were to be designated as prime beneficiaries for a stated period of time in the event that Mary remarried or predeceased Gerard.

Each party retained certain rights in the policies. Under the decree Gerard could borrow on the policies up to fifty percent of their cash value, but his estate was obligated to repay such loans so as to preserve the value of the policies. Gerard retained the right to "substitute other policies" for those then held provided that $45,000 of insurance be maintained at all times. The policy also provided that he would receive any dividends paid by the insurer. Under the options set out in the policies he could apply such dividends toward his premium obligations. Mary, on the other hand, was given the exclusive right to choose the settlement option for the distribution of the insurance proceeds.

The Commissioner disallowed Gerard's 1957 premium payments as a deduction from his income and assessed a deficiency of $577.17 on a joint return filed by petitioners for that year. Subsequent

to the Commissioner's action, the taxpayer executed an absolute written transfer of title in the policies to Mary and in 1961 the parties secured an amendment *nunc pro tunc* of their divorce decree from the Nevada court incorporating the provisions of this transfer. The Tax Court nevertheless upheld the assessment on the basis of its holding that Mary did not own the policies during 1957 since the incidents of ownership remained with the taxpayer.

Gerard contends that the terms of their separation agreement, as incorporated into the Nevada decree, establish the premium payments as part of his alimony obligation under this decree and thus as income deductions to petitioners. 26 U.S.C. §§ 71, 215 (1958). As support for this contention, they rely on Estate of Hart v. Commissioner, 11 T.C. 16 (1948), for their argument that "in addition to an irrevocable" transfer of a life insurance policy, the parties may specifically agree that these payments are part of Gerard's alimony obligation.

The facts of Hart are indeed very similar to those of the present case. In Hart the taxpayer and his wife obtained a divorce decree which modified and incorporated the provisions of a prior separation agreement. The decree required the insured taxpayer to pay the premiums on life insurance designating his wife as the prime beneficiary but such premiums were expressly "included" as part of his alimony obligation. The taxpayer had previously reserved the right to alter, amend or revoke the policies but the decree expressly barred him from the exercise of this power. The taxpayer's wife had to survive him in order to retain any interest in the proceeds of the policies and her share was decreased if she survived him but subsequently remarried. The Tax Court allowed the taxpayer to deduct the premium payments and disregarded the survival clause in the decree to hold that the benefits generated by the premium payments were not too contingent to be valued as a tax deduction. The court supported this conclusion by reasoning that all significant contingencies, including the right to decrease the amount of insurance and thus to increase the cash payments, were under control of the wife.

Although Hart could be distinguished on somewhat tenuous grounds, standing alone the decision would nevertheless be very persuasive in favor of the taxpayer in the present case. Grounds of distinction include, for example, the fact that the beneficiary wife in Hart had the power to increase the amount of the cash payments due from the taxpayer while in the present case Mary had no such power and Gerard alone retained the option to substitute other policies. In addition, the decree in Hart obligated the insured taxpayer not to exercise his reserved power to amend or revoke while a similar bar is omitted from the decree in the present case. However, the privilege of the beneficiary in Hart to increase the cash payments due from the insured would not be sufficient to compel disallowance of the claimed deduction. Moreover, Mary obtained more than ephemeral benefits in the present case since the contempt sanctions standing behind the Nevada decree are persuasive at least that the taxpayer will not avoid his obligations through his right of substitution.

But Hart has been limited by subsequent decisions although these rest on a variety of grounds. At first Hart was distinguished in order to hold that particular agreements regulating a marital split contemplated insurance policies on which premiums were paid for the benefit of a former spouse as mere security for the performance of other aspects of these agreements. These payments were thus not denominated as alimony since it was held that the beneficiary had not received sufficient benefits to justify a deduction. Blumenthal v. Commissioner, 183 F.2d 15 (3d Cir. 1950); Carmichael v. Commissioner, 14 T.C. 1356 (1950). Other decisions relied upon the standard death or remarriage clause found in most of these marital agreements, to hold that the policies represented mere security because the bene-

fits conferred by premium payments were too remote to qualify as alimony. Baker v. Commissioner, 205 F.2d 369 (2d Cir. 1953); Smith v. Commissioner, 21 T.C. 353 (1953).

The determination of whether the policies were deposited as security for the performance of alimony obligations was subsequently held to present needlessly limited issues and was abandoned in favor of a broader evaluation of the economic benefits received by their beneficiary under the policies and premium payments. Seligmann v. Commissioner, 207 F.2d 489 (7th Cir. 1953); Mandel v. Commissioner, 229 F.2d 382 (7th Cir. 1956), affirming 23 T.C. 81 (1954). Under this test, the courts reasoned that "[t]he very essence of taxable income * * * is the accrual of some gain, profit or benefit to the taxpayer. * * *" 229 F.2d at 387, quoting Commissioner v. Wilcox, 327 U.S. 404, 407, 66 S.Ct. 546, 90 L.Ed. 752 (1946), and that the "bare receipt of property or money wholly belonging to another lacks the essential characteristics of a gain or profit within the meaning of [the] * * *" alimony provisions of sections 22(k) and 23(u) of the 1939 Code or sections 71 and 215 of the 1954 Code. Ibid., quoting 327 U.S. at 408, 66 S.Ct. 546. However, in their application of this standard the courts have again concentrated on the presence of death or remarriage survival clauses in the provisions regulating distribution of insurance proceeds to hold that premium payments made by the insured under such survival clauses were subject to too many contingencies for proper valuation and were thus never even constructively received by the beneficiary as required by sections 71 and 215, e. g., Mandel v. Commissioner, supra; Seligmann v. Commissioner, supra; Smith's Estate v. Commissioner, 208 F. 2d 349, 353 (3d Cir. 1953); Bradley v. Commissioner, 30 T.C. 701 (1958).

This court has not precisely followed the reasoning of this more recent line of authority. In Weil v. Commissioner, 240 F.2d 584 (2d Cir. 1957), cert. denied, 353 U.S. 958, 77 S.Ct. 864, 1 L.Ed.2d

909 (1957), this court held that a taxpayer had "clearly retained ownership" of certain policies and could not deduct premiums paid absent an assignment of these policies to his former spouse and in Hyde v. Commissioner, 301 F.2d 279 (2d Cir. 1962) held that a complete transfer of ownership is necessary to support a deduction.

Petitioners attempt to distinguish the cases following Hart on the ground that none of these decisions has discussed or balanced whether or not the beneficiary spouse has a realizable and substantial economic gain where the marital agreement stipulates that premium payments are to be considered as valuable periodic payments for support and stipulates further that the results of such payments are to be regarded as substantial benefits received during the tax year in question. Petitioners' argument is partially correct since the decisions applying the economic benefit test against a taxpayer do not discuss at length the terms of particular provisions, regulating the premium payments. Nevertheless, it is apparent that the weight of recent authority has equated benefits with ownership and has refused to allow a deduction where the beneficiary has failed to obtain non-contingent substantial proprietary rights in the proceeds of the policies and thus in the benefits generated by the premium payments.

In effect, petitioners ask that the weight of authority, including Weil and Hyde, be distinguished or reconsidered by this court and that we reverse the decision of the Tax Court. But after careful consideration of his arguments, we affirm the decision of the Tax Court and adhere to the position that ownership of the policies is necessary to support a deduction. State law cannot control the quantum of benefits, received by Mary, necessary to support a deduction under federal law of income taxation, however solicitous such state decisions may be of the rights of a beneficiary of life insurance. The label that the parties place upon their transactions is not binding upon the Commissioner. Mer-

chant's Loan & Trust Co. v. Smietanka, 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751 (1921). In addition primary emphasis on the wording of a particular marital agreement will only produce a vague, over-refined and unsatisfactory line of precedent.

■ In the present case Gerard owed little more than a general contractual obligation to Mary. While performance of his obligation could be at Mary's option, she received nothing in the tax year in question from the premium payments beyond an aid to her "peace of mind," Seligmann v. Commissioner, supra, 207 F.2d at 494, through the realization that she had a chance of an eventual share in proceeds of the policies. Almost complete rights of ownership in the policies were retained by Gerard. He held title to the policies and retained the right to borrow on them as well as a contingent reversionary interest in the proceeds and his right of substitution. Moreover, under even a narrow definition of Gerard's retained interests, Mary was not the sole beneficiary of the benefits generated by the premium payments since the value of his right to the surrender value of the policies increased with each premium payment. Gerard reaped too many benefits from his premium payments in 1957 to justify their deduction as alimony and thus inferentially as income to Mary.

■ Petitioners also contend that the *nunc pro tunc* amendment of the Nevada decree effects an absolute transfer of Gerard's interest in the policies and justifies allowance of his claimed deduction. Petitioners reason that one of the factors the courts have considered is whether or not the policies were at any time assigned to the beneficiary. The benefits, however, conferred by the premium payments had to be actually received by Mary in 1957. "What is income is controlled by federal law," Daine v. Commissioner, 168 F.2d 449, 451, 4 A.L.R.2d 248 (2d Cir. 1948), and retroactive judgments of state courts cannot thus affect the rights of the federal gov-

ernment under its tax laws. In this light and absent a special carryback provision, it would be hard to justify a construction of the usual rules of income taxation which would allow a later transfer somehow to stand for benefits never available to Mary in 1957. Daine v. Commissioner, supra.

The decision of the Tax Court is affirmed.