Richard E. and Helen V. STEVENS, Appellants,

v.

COMMISSIONER OF INTERNAL REV-ENUE, Appellee.

Wanda Z. STEVENS, Appellee,

v.

COMMISSIONER OF INTERNAL REV-ENUE, Appellant.

Nos. 27, 28, Dockets 34428, 34436.

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1970.

Decided Feb. 25, 1971.

Stanley Pressment, New York City, for appellants Richard E. and Helen V. Stevens.

Issie L. Jenkins, Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, and Loring W. Post, Dept. of Justice, Washington, D. C., on the brief), for Commissioner.

Robert B. Berger, Enfield, Conn., for appellee Wanda Z. Stevens.

Before LUMBARD, Chief Judge WATERMAN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

Taxpayers Richard E. and Helen V. Stevens [1] appeal from a decision of the Tax Court which determined a deficiency in their income tax for the taxable year 1964.[2] The question presented is whether a portion of certain life insurance premiums paid by Richard is includable under § 71 of the Internal Revenue Code of 1954 in the gross income of Wanda Stevens, Richard's divorced spouse, and deductible by him under § 215 of the Code.

They were divorced in February, 1962 by a decree of the Superior Court of the State of Connecticut, under the terms of which Richard was ordered to make alimony, support and education payments to Wanda over an eleven year period and to post insurance policies in the amount of $65,000 as security, in the event of Richard's death, for the remaining payments. The policies, in the required face amount, were posted by Richard on the date of the decree.

Subsequently he obtained an ordinary or straight life insurance policy from the Phoenix Mutual Life Insurance Company of Hartford and designated Helen V. Stevens as beneficiary of this policy. On November 25, 1963 Richard and Wanda executed a Special Settlement Agreement modifying the beneficiary designation provision of the Phoenix Mutual policy. This Agreement revoked the designation of Helen V. Stevens as beneficiary and provided that, if Richard died before the expiration of the alimony period, Wanda would receive that portion of the face amount of the policy that equalled the total of the remaining unpaid alimony payments.[3] It

was also stipulated that if Wanda predeceased Richard or if Richard did not die during the alimony period, the children of Richard and Wanda, or the estates of those children, would receive the entire death benefit. Ownership of the policy was assigned to Wanda, but all rights incident to that ownership were made subject to provisions of the divorce decree.

In his 1964 return Richard deducted, in addition to the alimony payments made directly to Wanda, the $1,785.05 premium he paid to Phoenix Mutual. Wanda reported as gross income only those payments she received directly from Richard. The Commissioner took inconsistent positions in his deficiency notices; he disallowed Richard's claimed deductions of $1,785.05 and increased Wanda's alimony income by the same amount.

At consolidated proceedings before the Tax Court Richard claimed a deduction of $850, an amount equal to the cost in 1964 of a reducing term insurance policy. The Commissioner contended that no portion of the premium was deductible by Richard nor includable in Wanda's gross income. The Tax Court upheld this position and ruled that Wanda's interests as owner and beneficiary of the policy were so "entirely inconsequential" that Richard's premium payment conferred no taxable benefit on his former wife. We reverse.

Section 71(a) makes includable in the income of a divorced wife a payment (1) incurred by her husband under a divorce decree or settlement agreement incident to such decree [4] and (2) received by the

---

1. Helen V. Stevens is a party to this action only because she and her husband Richard filed a joint return.

2. The findings of fact and conclusions of law of the Tax Court are reported at P-H Memo. T.C. ¶69,137.

   The Commissioner has taken a "protective appeal" from the Tax Court decision requesting this court to rule that any amount of the premium payment it finds deductible by Richard is includable in Wanda's gross income.

3. The difference between the amount payable to Wanda and the face amount of the policy was payable to the three children of Richard and Wanda.

4. The Tax Court ruled against the taxpayer on alternative grounds. As its first basis for decision the Tax Court found that the Special Settlement Agreement was an "ancillary agreement." Payments made pursuant to such an "ancillary agreement," the Tax Court held, did not fulfill the requirement of § 71 that

wife (3) as one of a series of periodic payments (4) in discharge of the husband's obligation to support his wife. Payments includable in a wife's gross income are deductible by her divorced husband under § 215. The question of deductibility in the present case turns on whether Wanda constructively received a taxable benefit from the premiums Richard paid to the insurance company.

The Commissioner has for many years taken the position that premiums paid by a husband on a life insurance policy assigned to his former wife and designating her as the irrevocable beneficiary are constructively received by, and taxable to, the wife. Rev.Rul. 57–125, 1957–1 Cum.Bull. 27; I.T. 4001, 1950–1 Cum.Bull. 27. Relevant decisions of this court have emphasized the same factors upon which the Commissioner has predicated the deductibility of premium payments. In Hyde v. Commissioner of Internal Revenue, 301 F.2d 279 (2 Cir. 1962), a husband paid premiums on policies irrevocably assigned to, and held by, his divorced spouse pursuant to a separation agreement incorporated into a divorce decree. Emphasizing that the husband retained no interest in the policies and that the wife was the exclusive recipient of the benefit accruing from the premium payments, this court held that the wife constructively received a taxable benefit equal to the amount of the premiums. The deductibility of premium payments was denied, however, in Piel v. Commissioner of Internal Revenue, 340 F.2d 887 (2 Cir. 1965). There the divorce decree required the husband to pay premiums on an alimony-protection policy and permitted him to deduct the amount paid from his monthly alimony obligation. The divorced spouses each possessed certain rights in the policy: the husband held the title to the policy and retained the rights to borrow against the policy, to surrender the policy in exchange for its cash surrender value, and to designate a contingent beneficiary in the event his divorced wife remarried or predeceased him; the wife retained the right to choose the settlement option for the distribution of the insurance proceeds. After reviewing contentions that policies deposited as security for alimony payments did not confer benefits sufficient to justify a deduction, e. g. Blumenthal v. Commissioner of Internal Revenue, 183 F.2d 15 (3 Cir. 1950), and that the proceeds of policies containing a standard survival clause were subject to so many contingencies of valuation that the premium payment could not be constructively received, e. g. Seligmann v. Commissioner of Internal Revenue, 207 F.2d 489 (7 Cir. 1953); Mandel v. Commissioner of Internal Revenue, 229 F.2d 382 (7 Cir. 1956), this court adhered to the position of Weil v. Commissioner of Internal Revenue, 240 F.2d 584 (2 Cir.), cert. denied 353 U.S. 958, 77 S.Ct. 864, 1 L.Ed. 2d 909 (1957), and Hyde v. Commissioner of Internal Revenue, *supra,* "that ownership of the policies [by the wife] is necessary to support a deduction." Under the circumstances the husband "reaped too many benefits from his premium payments" by retaining "almost complete rights of ownership," and the deductibility of the premium payments was disallowed.

■ While absolute assignment of policy ownership is a condition necessary to constructive receipt of any benefit purchased by premium payments, absolute assignment alone is not a sufficient basis for deductibility. In his

payments be "imposed or incurred by the husband under the [divorce] decree or a written instrument incident to such divorce or separation." The Commissioner does not press this interpretation, nor could we sustain such a construction of the statute. The Special Settlement Agreement implemented the terms of the decree requiring the husband to post in-

surance policies as security for the payment of alimony. It was therefore "a written instrument incident to such divorce" within the meaning of § 71. See Lerner v. Commissioner of Internal Revenue, 195 F.2d 296 (2 Cir. 1952); Mertens, Jr., 5 Federal Income Taxation § 31A.02 (rev. ed. 1969).

most recent ruling the Commissioner adopts the second deductibility requirement of *Hyde* and *Piel*. Rev.Rul. 70–218, Internal Revenue Bulletin 1970–19 (May 11, 1970) predicates deductibility upon an assignment to the divorced wife of all the incidents of policy ownership and upon the irrevocable designation of the wife as beneficiary and their children as contingent beneficiaries of the policy.

■ Under the provisions of the Special Settlement Agreement Richard irrevocably assigned to Wanda ownership of the Phoenix Mutual policy. By so doing Richard transferred to her all the contractual rights incident to policy ownership and divested himself of the power to change the beneficiary, to borrow against the policy or to surrender the policy for its cash value.[5] We cannot agree with the Tax Court that the provision of the agreement making Wanda's exercise of these powers subject to the approval of the divorce court, rendered these contractual rights "entirely inconsequential." We cannot assume that the divorce court would prohibit exercise of ownership powers in situations where prudence dictated such exercise. Rather we believe the first prerequisite to premium deductibility—assignment of policy ownership to the divorced spouse—has been fulfilled.

Nor can we uphold the Tax Court's conclusion that, because Wanda's interest in the proceeds terminated if she predeceased Richard, Wanda was not the irrevocable beneficiary of the policy. Because constructive receipt presupposes a vested right to receive a fixed amount, some courts have denied the deductibility of premium payments where the interest of the divorced spouse in the proceeds was contingent upon her out-living her former husband. See Blumenthal v. Commissioner of Internal Revenue, *supra*; Seligmann v. Commissioner of Internal Revenue, *supra*; *contra* Estate of Boies C. Hart, 11 T.C. 16 (1948), acq. 1949–1 Cum.Bull. 2. But the Commissioner has recognized that the standard death provision is not the kind of contingency which will forestall operation of the constructive receipt principle where the children are irrevocably designated contingent beneficiaries. Rev.Rul. 70–218, *supra*. To deny constructive receipt of benefit whenever the wife's interest in the proceeds is contingent on her surviving her former spouse is to presume that an insurance policy's only value to the beneficiary lies in receipt of the face amount upon death of the insured. If this analysis were correct, premiums paid on a term insurance policy could never qualify as alimony payments because the protection of term insurance to an irrevocable beneficiary extends only for a specified period rather than over the life of the insured. See Note, Alimony Taxation of Indirect Benefits: A Critique and a Proposal, 66 Col.L.Rev. 1118, 1132–35 (1966). Rather the contingencies which will deny deductibility are those which might operate to thwart the wife's receipt of the economic benefit the premium payments conferred, that is, the protection, during a limited term, of the wife's right to receive alimony over the full alimony

---

5. Richard retained the right to receive dividends and to apply dividends received against the premiums owing. This right does not, however, mean that Richard reaped the benefit of policy ownership. By claiming as deductible only $850 of the $1,949.55 total premium paid in 1964, Richard presupposes that he had purchased an annual renewable term insurance policy with a reducing face amount, instead of the ordinary life policy he did buy. The cost of term insurance is computed by multiplying the face amount of the policy by the percentage possibility that the insured will die during the term for which protection is purchased. Unlike the level premiums of an ordinary life policy, term insurance premiums include no increment by which a reserve accumulates with the insurance company. By claiming only that portion of the premium equal to that of a term insurance policy, Richard discounted all benefit from dividends received.

period.[6] Such contingencies include the husband's retention of the power to borrow against the policy, to withdraw its cash surrender value or to substitute himself as beneficiary if the wife predeceases him. See Piel v. Commissioner of Internal Revenue, *supra*, 340 F.2d at 889.

As assignee and irrevocable beneficiary of the Phoenix Mutual policy, Wanda constructively received a taxable benefit in the amount of Richard's claimed deduction of $850, which was a part of her gross income.

The decisions in both appeals are reversed, and the cases are remanded to the Tax Court for entry of judgments consistent with this decision.

---

6. This protection is analogous to that purchased by fire insurance, the cost of which is also based on the possibility of loss during the period of coverage. Fire insurance provides the divorced spouse a monetary benefit measurable by its cost. See

Florence H. Griffith, 35 T.C. 882, 894–895 (1961) (Raum, J., dissenting). Similarly, the beneficiary of a term life insurance policy receives a year's protection equal in value to the premium paid. See Treas.Regs. § 1.72–16(b).