RITA G. MARSHALL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marshall v. Commissioner
Docket Nos. 695-74, 2517-74.
United States Tax Court
T.C. Memo 1976-34; 1976 Tax Ct. Memo LEXIS 369; 35 T.C.M. (CCH) 138; T.C.M. (RIA) 760034; February 9, 1976, Filed George C. Shattuck, for the petitioner. Louis J. Zeller, Jr., for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: In these consolidated cases, respondent has determined the following deficiencies in petitioner's Federal income tax: Docket No.
Year
Deficiency
695-74
1966
$ 515.75
1967
4,891.39
1968
4,424.36
1969
6,881.76
2517-74
1970
2,766.37
1971
2,350.55
The *371 parties have reached a settlement as to a portion of the 1971 deficiency. The issues remaining for decision are (1) whether petitioner received alimony income in excess of the amounts she reported for the taxable years 1966 through 1970; (2) whether the statute of limitations bars the assessment and collection of the tax for the year 1967; and (3) whether petitioner may claim a bad debt deduction for unpaid alimony or child support for the 1971 taxable year. The parties stipulated all of the evidentiary facts and the case was submitted under Rule 122 Tax Court Rules of Practice and Procedure. This stipulation and the exhibits attached thereto are incorporated herein by reference. Petitioner, a resident of Syracuse, New York, at all relevant times, was married to Dr. David Marshall from 1944 until she was granted a decree of absolute divorce in the State of New York on January 5, 1971. Petitioner filed her Federal income tax returns for the years 1966 through 1968 with the district director of internal revenue, Buffalo, New York, and for the years 1969 through 1971 with the Internal Revenue Service Center at Andover, Massachusetts. For the taxable year 1967, Dr. Marshall filed a *372 return on which he claimed rates for married persons filing jointly although petitioner never signed such return, petitioner's income was not reported therein, and petitioner filed her own separate return for the same taxable year. In a later year, Dr. Marshall amended this and several other returns to claim "head of household" status. In 1973, petitioner notified respondent by letter that she wished to adopt Dr. Marshall's 1967 purported joint return as her own. Five children were born of petitioner's marriage to Dr. Marshall. The youngest child, born blind, deaf, and quadriplegic, died in 1965 at two years of age. The child's condition and the fact of her death caused much tension in the Marshalls' marital bond. Also contributing to marital strife were the investigation, indictment, and 1965 conviction of Dr. Marshall for income tax evasion. Dr. Marshall moved out of the family home in 1963. He stayed away for several months, but then began coming back to the house after business hours and staying until midnight. During these periods, he isolated himself in an office he maintained in the home. In 1966, petitioner commenced separation proceedings against Dr. Marshall on grounds *373 of abandonment and cruel and inhuman treatment. On November 7, 1966, petitioner filed a petition for an order of support and on November 17, 1966, the Family Court of the State of New York issued an order of support on behalf of petitioner and her children, which read in part as follows: ORDERED, that the above-named Respondent, upon notice of this Order, pay or cause to be paid through Onondaga County Family Court for and toward the support of his wife and child , for the period of each such child's minority, unless the duration of this Order is extended pursuant to Section 443 of the Family Court Act, the sum of $400.00 per week, such payments to commence on Nov. 18, 1966, and to be made each week thereafter, and it is further ORDERED Temporary order of su port [sic] which respondent pay $400.00 per week into court commencing Nov 18, 1966 for support of wife and children. Money disbursed to wife; amount to cover food, utilities, phone water, clothing maid, car maintenance, music lessons, entertainment and wife's insurance. Respondent to pay in addition all expenses of home, all medical and dental and all college expenses.
[1]
*374 The not too readily apparent intention of the above quoted support order was subsequently clarified in an affidavit by the issuing judge in anticipation of this litigation. The affidavit states that the court intended to award the following: -$400.00 weekly allowance for wife's and children's living expenses -home expenses of wife and children -medical and dental expenses of wife -medical and dental expenses of children -college expenses of children In 1968, a petition was filed in the Family Court on behalf of petitioner charging Dr. Marshall with violation of the 1966 support order. In response thereto, the Family Court issued a new order awarding petitioner and her children a $325 weekly allowance "for and toward the support of wife and children." This order superseded the prior support order. No provision for any additional payments by Dr. Marshall was made in the 1968 order. In 1971, a divorce was granted to petitioner. The divorce decree provided for $15,000 annual alimony and $3,000 annual payments for each of two of the children during their minority. For the years in question, petitioner received and reported as income the following amounts of the payments *375 received from Dr. Marshall pursuant to the support orders and 1971 alimony award: Year
Amount received
Amount reported
1966
$ 3,043.77
$ 480.00
1967
21,016.82
4,160.00
1968
16,719.58
2,615.00
1969
17,037.10
0
1970
8,900.00
0
1971
[1]21,500.00 17,484.25
Petitioner apparently excluded from income amounts she expended for her children which she thought to be her husband's obligation under the support orders and which Dr. Marshall failed to pay. Alimony Income
Section 71(a)(3) [2] requires a wife to include in her gross income periodic payments made by her husband to her pursuant to a court decree of support where the wife and husband are separated and do not file a joint return for the year in which payments are made. Section 71(b) excludes from income reportable by the recipient spouse those payments which the terms of such decree "fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband." *376 Notwithstanding the fact that she reported some alimony income in all but two of the years for which respondent has determined deficiencies, petitioner resists the application of section 71(a)(3) to payments received by her under the 1966 and 1968 court orders on various grounds. Petitioner contends that she and her husband were not separated until at least 1967 when Dr. Marshall purchased a home for himself, that payments required under the 1966 support order were not "periodic," that she and her husband filed a joint return for the 1967 taxable year, and that the unreported portion of payments received was excludable child support under section 71(b). Section 71(a)(3) does not require a legal separation in order to trigger income; it merely requires husband and wife to be living apart. Income Tax Regs. section 1.71-1(b)(3)(i). The record amply demonstrates (irrespective of the location of the burden of proof, which is involved in the statute of limitations issue, see p.17, infra that petitioner and Dr. Marshall were separated for purposes of this section at all pertinent times during the taxable years in question. Petitioner's commencement of separation proceedings against *377 her husband on grounds of abandonment in 1966 belies a contrary finding. Moreover, the decision of the court granting the petitioner her divorce states that she and her husband were separated since 1963. We are not persuaded that Dr. Marshall's address at the family home, as listed in the telephone directory for certain of the years in issue, supports a finding of cohabitation. Nor are we convinced that Dr. Marshall shared petitioner's abode until such time as he purchased a home for himself in 1967. Petitioner cites isolated incidents of Dr. Marshall's harassment of herself and other family members as evidence of Dr. Marshall's presence in the family home. We note that all of the cited incidents occurred prior to the years in question; yet, even had they occurred during the period involved herein, such isolated instances would hardly be indicative of living together, given all the surrounding circumstances. Petitioner maintains that payments made pursuant to the 1966 and 1968 support orders are not income because they are not periodic.[3] Petitioner argues that the support payments would cease upon the youngest child's reaching majority; since the youngest child would attain age *378 21 within 10 years of the first order, the payments were not periodic. Although the 1966 order had some preprinted language limiting payments to the duration of the children's minority, the court's insertions (see footnote 1, supra) did not contain such limitations. But whether or not the order was so limited, payments thereunder to cover various specified expenses would be periodic for want of a calculable principal sum. See Herbert v. Riddell,103 F. Supp. 369, 387 (S.D. Cal. 1952); Rev. Rul. 62-106, 62-2 C.B. 21. Furthermore, the stated weekly allowance payments thereunder would be periodic owing to the presence of contingencies. Income Tax Regs. section 1.71-1(d)(3) provides that support payments of a determinable principal sum spanning less than 10 years are nevertheless periodic if subject to any one of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse; such contingencies may arise under local law or otherwise. Since a husband's obligation to support his wife and the New York Family Court's power to enforce such duty by order continue only during pendency of a valid marital *379 relationship, [4] death or divorce (at least where the divorce decree contained provisions relating to alimony) would have terminated the obligation to make payments. Moreover, the support order was subject to upward or downward adjustment on account of Dr. Marshall's changed economic position as evidenced by the reduction of support in this case by the 1968 order. Payments made pursuant to this later order are clearly periodic, there being no language of temporal limitation and the same is true of the 1966 order because of the contingencies which would cause termination of, or change in, the payments required thereunder. See George B. Kent, Jr.,61 T.C. 133, 136-138 (1973). *380 Regarding petitioner's contention that she need not include in income any payments received from Dr. Marshall in 1967 by virtue of the filing of a joint return, we hold that no joint return was duly filed. The absence of her signature thereon, the omission of her income therefrom, and her filing of a separate return clearly support this conclusion. Petitioner's 1973 letter to respondent attempting to adopt Dr. Marshall's 1967 return as her own has no effect. While section 6013(b)(1) allows spouses to elect to file a joint return for a prior year in which separate returns were filed, section 6013(b)(2)(B) disallows such election "after the expiration of three years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse)." See Marko Durovic,54 T.C. 1364, 1401-02 (1970), modified on other grounds 487 F.2d 36 (7th Cir. 1973). Since this period expired on April 15, 1971, petitioner failed to make a timely election. Lastly, petitioner contends that any payments received by her from Dr. Marshall in excess of amounts reported as income were not taxable to *381 her under section 71(b), which excludes from a wife's income that part of any payment fixed by terms of the court decree or order as payable for the support of minor children. With respect to payments pursuant to the 1968 support order, there can be no doubt that the single award of a stated weekly allowance for the support of petitioner and her children failed to specify expressly a sum certain allocable to the children's support within the meaning of Commissioner v. Lester,366 U.S. 299, 303 (1961). Thus, no payments made pursuant to that order are excludable from petitioner's income. The 1966 support order is significantly different. To the extent that a flat weekly sum was awarded for the support of wife and children, no portion thereof constitutes child support under Lester,supra.Similarly, Dr. Marshall's obligation to pay expenses incurred in the maintenance of the home of both the wife and children is not chargeable to child support. Dr. Marshall's obligation to pay medical, dental, and college expenses incurred by the children, above and beyond the stated weekly allowance, however, is sufficiently designated as child support. [5] Respondent *382 argues the applicability of Katrina Van Oss,T.C. Memo. 1966-72, affd. 377 F.2d 812 (2d Cir. 1967), to preclude such a finding. The taxpayer in Van Oss received from her husband $24,000 annually. In addition, the husband was required to reimburse the taxpayer-wife for their children's schooling expenses to the extent that tuition exceeded $1,000 per child per year. At issue in Van Oss was the qualification of a portion of the stated annual allowance as excludable child support, not, as respondent contends, the excess tuition costs. The taxpayer failed to convince the court that because of the excess tuition clause, the first $1,000 of tuition for each child's schooling was a portion of the annual $24,000 specifically allocable to child support. The issue in Van Oss is, therefore, not analogous to the one that concerns us here. Both Lester,supra, and Van Oss,supra, focus on a wife's receipt of an aggregate sum which she was free to apply to whatever purposes she *383 so chose. In other words, mere contractual or judicial suggestion that a portion of a payment should be applied to the children's benefit does not detract from the wife's freedom to spend it as she sees fit. This freedom does not inhere in payments to cover specific expenses incurred on behalf of the Marshall children. We think this case falls more properly within the ambit of Eugene F. Emmons,36 T.C. 728 (1961), affd. per curiam 311 F.2d 223 (6th Cir. 1962) (distinguished in Van Oss), and of William E. Borbonus,42 T.C. 983 (1964). Having determined that Dr. Marshall had separable alimony and child support obligations under the 1966 order, to the extent that any of his payments fell short of his total obligation, section 71(b) requires "so much of such payment as does not exceed the sum payable for [child] support shall be considered a payment for such [child] support." Martha J. Blyth,21 T.C. 275 (1953). For each of the taxable years affected by the 1966 support order, we have computed the amount by which Dr. Marshall's payments have fallen short of his obligation and the extent to which such payments are *384 allocable to child support under section 71(b). Our computation appears in tabular form below: 1966
1967
1968
(11/18-12/31)
(1/1-2/13)
Amount Owing $400 Weekly Allowance
$2,800.00
$20,800.00
$2,400.00
[1]Home Expenses 0
0
0
[2]Wife's Medical Expenses 243.77
216.82
[3]294.58 Children's Medical
[4]Expenses 0
0
0
Total
$3,043.77
$24,792.82
$3,874.58
Amount Paid
$3,043.77
$21,016.82
[5]$2,289.77 Amount Owed But Unpaid $0
$ 3,776.00
$1,584.81
Amount Allocable
To Child Support $0
$ 3,776.00
$1,180.00
*385 Statute of Limitations for 1967
Accounting for the appropriate child support exclusion for the taxable year 1967, petitioner has omitted from gross income items properly includable for that year which exceed 25 percent of her reported income. [6] Therefore, respondent had six years, after the filing of petitioner's return for said year, in which to collect the tax owing. Section 6501(e). Respondent's 1973 notice of deficiency for the taxable year 1967 was timely. Bad Debt Deduction
Petitioner argues alternatively that if any unreported receipts from her husband pursuant to the 1966 and 1968 support orders do constitute income, she is entitled to a bad debt deduction in respect of Dr. Marshall's delinquencies in alimony and/or child support. Petitioner takes the position that she was forced to cover expenses, properly changeable to Dr. Marshall. To the extent petitioner did cover Dr. *386 Marshall's obligations, we find petitioner is not entitled to take a bad debt deduction. Our position that unpaid alimony or child support cannot be deducted as a bad debt is well settled. Dale A. Swenson,43 T.C. 897 (1965); Pearl A. Long,35 B.T.A. 479 (1937), affd. 96 F.2d 270 (9th Cir. 1938); see also Mary J. Williford,T.C. Memo. 1975-65; Shirley S. Imeason,T.C. Memo. 1969-180 affd. per curiam 487 F.2d 319 (9th Cir. 1973). [7]
*387 Decision will be entered under Rule 155.
Footnotes
1. Roman type represents the pre-printed portion of the Order; italics represent the court's insertions.↩
1. Consisting of $12,500 current alimony, $8,775.00 arrearages and $225.00 prepayment of 1972 alimony.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. The Code does not define "periodic payments." However, section 71 provides, in part, as follows: (c) Principal Sum Paid in Installments.-- (1) General rule.--For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years.--If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.↩
4. See N.Y. Family Ct. Act, sec. 411, 412 (29A McKinney 1963); N.Y. Domestic Relations Law, sec. 248 (14 McKinney 1964); Gandelman v. Gandelman,39 A.D. 2d 727, 331 N.Y.S. 2d 977 (2d Dept. 1972); Smith v. Smith,60 Misc. 2d 692, 303 N.Y.S. 2d 193 (Family Ct. 1969). Whether a divorce decree without provision for alimony would have terminated the obligation under the Family Court order is an issue which we need not decide. See Vernon K. Carle,54 T.C. 827, 831↩ (1970).
5. This obligation did not survive the 1968 superseding order, notwithstanding petitioner's implicit assumption to the contrary.↩
1. No evidence of home expenses incurred has been introduced nor is there any indication in the record that Dr. Marshall ever reimbursed petitioner for any home expenses. ↩
2. No evidence of medical expenses has been introduced from which we can determine which expenses were those of petitioner and which were those of the children. Thus, we have no choice but to attribute such expenses to petitioner. ↩
3. For the year 1968, we have only an annual figure of the petitioner's medical expenses paid for by Dr. Marshall. Since Dr. Marshall was not obligated to reimburse petitioner for such expenses under the order dated Feb. 13, 1968, we attribute this figure in its entirety to his obligation and payment under the 1966 order. ↩
4. We figure college expenses to be those shown by petitioner's cancelled checks to educational institutions attended by her children. ↩
5. For the year 1968, we have only an annual figure of Dr. Marshall's payments other than for petitioner's medical expenses. We prorated this figure ($16,425) by 6/52 and then added the medical expense reimbursement.↩
6. Amount received from husband
$21,016.82
Less child support
3,776.00
Amount reportable as alimony
$17,240.82
Less amount reported as alimony
4,160.00
Omitted income
$13,080.82 Omitted income exceeds 25 percent of the $5,298.78 reported as total gross income.↩
7. Petitioner tries to overcome this strong line of authority by seizing upon some language contained in the Court of Appeals' per curiam affirmance of Shirley S. Imeson,T.C. Memo. 1969-180, affd. per curiam 487 F.2d 319 (9th Cir. 1973), to the effect that the taxpayer's deduction was denied because of a failure of proof of her basis in the debts of her husband created by her assumption of his obligations. 487 F.2d at 321. Petitioner claims that because she can prove her expenditures, she can establish a basis. But the establishment of a basis in a debt presupposes the existence of a valid and enforceable debt which, the suggestion of the Court of Appeals to the contrary notwithstanding, is an unacceptable premise under the decided cases. See Mary J. Williford,T.C. Memo. 1975-65↩.