Herbert L. SPERLING and Janice Sperling, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 233, Docket 83-4087.

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1983.

Decided Jan. 20, 1984.

Thomas A. Condon, New City, N.Y. (Birbrower, Montalbano, Condon, Seidenberg & Frank, New City, N.Y., of counsel), for petitioners-appellants.

Patricia A. Willing, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C., Michael L. Paup, Gary R. Allen, Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before FRIENDLY, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from an order of the United States Tax Court, Cohen, J., entered

on February 2, 1983 after a written decision ruling that the Petitioner Herbert Sperling's payments of life insurance premiums and children's college expenses pursuant to a separation agreement and judgment were not includable in his former wife's income as alimony and therefore not deductible by him under 26 U.S.C. § 215(a) (1976).

We affirm the order of the tax court.

Appellant Herbert Sperling (Sperling)[1] asserts here as he did before the Commissioner of Internal Revenue (Commissioner) that college expenses of Sperling's children by his former wife paid by him pursuant to a stipulated separation agreement and judgment are alimony and thus deductible because a sum certain was not fixed and an economic benefit was conferred on his former wife. Appellant further maintains that life insurance premium payments made by Sperling were constructively received by his former wife and constitute alimony based on an economic benefit theory, even though his former wife did not own the policies and she and her children were not absolute beneficiaries thereof. The Commissioner disagreed and determined deficiencies in appellants' federal income taxes of $19,973.32[2] for the tax years 1974–76. The tax court found for the Commissioner. 45 T.C.M. (CCH) 193 (1982). We affirm.

## BACKGROUND

When Herbert and Phyllis Sperling's marital problems became insoluble they retained attorneys to negotiate the terms of a separation and divorce agreement. In open court on March 20, 1967 they announced an agreement (separation stipulation) which stated in pertinent part:

1. The wife shall have full custody and control of the three infant issue . . . .

. . . .

9. The husband agrees to pay to the wife *as alimony* for her support and for the support, maintenance and *education* of the children, *except as hereinafter set forth,* the sum of $33,500 per annum, payable $644.23 per week . . . .

10. *In addition to the foregoing payment* the . . . husband is to pay for the following items:

. . . .

(c) tuition, laboratory fees, books and residence fees for each child for four years at college, on condition that the college be selected jointly by the child and by the husband.

. . . .

12. . . . The husband shall pay the premiums necessary to keep [several enumerated whole life insurance policies on the life of the husband] in full force and effect, and shall not borrow against the cash value of any of them except against the cash value of Policy No. 43359 in order to have the proceeds of the loan applied against the premium of the said policy. So long as the wife remains unmarried and any of the children is under the age of twenty-one years or has not completed his education, the wife shall be the beneficiary of the said policies.

If the wife should remarry, the children, or such of them as shall be under the age of twenty-one years or shall not [sic] have completed their education, shall be the beneficiaries, in equal shares, of the said policies. If the wife should remarry and if all of the children shall be over the age of twenty-one years and shall have completed their education, the said policies shall be transferred and delivered to the husband who shall thereafter have complete control thereover.

In order to assure the parties hereto that the provisions of this paragraph are carried out, ownership of said policies shall be transferred to David Coral and Milton Kail, who shall hold such policies as trustees in accordance with the terms of this paragraph.

1. Janice Sperling is a party to this proceeding solely by virtue of having filed joint returns with Sperling.

2. The Commissioner initially determined a deficiency of $22,862.11. This amount was later redetermined and reduced by $2,888.79 to constitute the sum of $19,973.32.

Exhibit 13–M (emphasis added). This stipulation was incorporated into a judgment of separation (separation judgment) dated March 30, 1967. It provided in pertinent part:

[T]hat the [wife] is entitled to the general custody of the three children . . . .

. . . .

... that the [husband] pay to the [wife], during the life of the [wife], or until the further order of this court, the sum of $644.23 per week ... for the support and maintenance of the [wife] and the support, maintenance and education of the infant children of the parties . . . .

. . . .

... that the [husband] shall maintain each of his children who qualifies for entrance at a college to be selected jointly by the [husband] and the child who is to attend such college for a period of four years. During the said four years the [husband] shall pay all fees for tuition, laboratory, residence and books which may be required and necessary. . . . .

. . . .

... that the [husband] shall continue to maintain [several enumerated whole life insurance policies on the life of the husband] ... [and] shall pay the premiums necessary to keep these policies in full force and effect, and shall not borrow against the cash value of any of them except against the cash value of Policy No. 43359, in order to have the proceeds of the loan applied against the premium of the said policy. So long as the [wife] remains unmarried and any of the children is under the age of twenty-one years, or has not completed his or her education, the [wife] shall be the beneficiary of the said policies. If the [wife] should remarry, the children, or such of them as shall be under the age of twenty-one years, or shall not have completed their education, shall be the beneficiaries, in equal shares, of the said policies. If the [wife] should remarry and if all of the children shall be over the age of twenty-one years and shall have completed their education, the said policies shall be transferred and delivered to the [husband] who shall thereafter have complete control thereover, and it is further

ORDERED AND ADJUDGED, that for the purpose of carrying out the provisions of this decretal paragraph, ownership of said policies shall be transferred to David Coral, Esq. and Milton Kail, Esq., who shall hold such policies as trustees, in accordance with the terms hereof.

Exhibit 4–D.

Sperling and Phyllis were divorced in Mexico on August 30, 1967. Phyllis remarried on June 6, 1975. On July 28, 1975 Phyllis was removed as the primary beneficiary of the life insurance policies and was replaced by the three Sperling children as co-beneficiaries. Ownership of the policies was transferred to Sperling on September 30, 1981 after all three of the children reached the age of 21 and completed their educations. He subsequently cashed in the policies and received the cash surrender value of $19,008.73 as proceeds.

The present controversy centers on the following alimony deductions taken by Sperling:

| Year and Nature | Amount |
|---|---|
| 1974 | |
| Tuition and Expenses (Robin) | $ 5,190.33 |
| Life Insurance Premiums | 3,384.43 |
| 1975 | |
| Tuition and Expenses (Robin and Cindy) | 14,582.41 |
| Life Insurance Premiums | 4,734.37 |
| 1976 | |
| Tuition and Expenses (Robin and Cindy) | 12,965.90 |
| Life Insurance Premiums | 3,433.10 |

Tuition payments were made directly to Northwestern University. The premiums paid were for the policies held in trust under the separation stipulation and judgment.

## DISCUSSION

### I. College Expenses

26 U.S.C. § 215(a) (1976)[3] permits a husband[4] to deduct from his gross income payments made to his former wife which are includable in her gross income as alimony pursuant to 26 U.S.C. § 71(a) (1976).[5] A husband is not entitled to deduct from his gross income child support payments as defined in 26 U.S.C. § 71(b) (1976)[6] and the wife is not required to include such payments in her gross income.

■ Section 71(b) dictates that the college expense payments were child support. They were made under the express provisions of the separation stipulation and judgment, which required Sperling to pay for his children's college tuition and expenses. Such payments were made "for and in behalf of the children," *Mandel v. Commissioner*, 229 F.2d 382, 388 (7th Cir.1956), and thus do not constitute alimony. *See Em-* mons *v. Commissioner*, 36 T.C. 728, 738 (1961), *aff'd mem.*, 311 F.2d 223 (6th Cir. 1962).

Sperling relies on *Commissioner v. Lester*, 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306 (1961), for the argument that section 71(b) does not control because the parties did not "specifically designate" or "fix" a sum certain to be paid on behalf of the children. In *Lester* the Supreme Court stated that where alimony payments are made "[t]he agreement must *expressly specify or 'fix' a sum certain or percentage* of the payment for child support before any of the payment is excluded from the wife's income." 366 U.S. at 303, 81 S.Ct. at 1346 (emphasis added).

There, the husband agreed to supply a periodic, fixed payment which would be reduced by a percentage upon the death, marriage or emancipation of minor children. The Court, interpreting the predecessor to section 71(b), specified the strict rule quoted above. Here, however, the issue is not

3. 26 U.S.C. § 215(a) (1976) provides in pertinent part:

> In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year.

4. The terms "husband" and "wife" are used generically in this opinion to designate, respectively, the "paying spouse" and the "receiving spouse." *See* 26 U.S.C. § 7701(a)(17) (1976).

5. 26 U.S.C. § 71(a) (1976) states:

> (1) Decree of divorce or separate maintenance
> If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.
> (2) Written separation agreement
> If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular

intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.
> (3) Decree for support
> If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

6. 26 U.S.C. § 71(b) (1976) provides in pertinent part:

> Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband.

Federal law provides that the definition of "minor children" is children under the age of 21. *Borbonus v. Commissioner*, 42 T.C. 983, 990–92 (1964); 5 J. Mertens, Law of Federal Income Taxation § 31A.06, at 56 (1975).

whether a portion of a static payment should be deemed child support. The judgment of separation provides for fixed periodic payments "for the support and maintenance of the [wife] and the support, maintenance and education of the infant children" and *additionally and separately* requires Sperling to pay for his children's college expenses. The dispute centers around *not* the general payment for the support and maintenance of wife and children (and education of children) but the nature of the college expense payments. The tax court determined that:

> Resort to the rule of *Lester* ... is not necessary when an amount is payable in its entirety (or 100 percent) on behalf of the child, and totally bypasses any right of participation or control by the non-paying parent.

45 T.C.M. (CCH) at 196.

The rationale of *Lester* is that the wife must declare income where she in her discretion may use the money she receives. Such is not the case here. The payments in question here were made directly to Northwestern University. Even if they had been made to the former wife, she would not have had indiscriminate use of the money. Cf. *Helvering v. Horst,* 311 U.S. 112, 118, 61 S.Ct. 144, 147, 85 L.Ed. 75 (1940) ("The power to dispose of income is the equivalent of ownership of it."); *Corliss v. Bowers,* 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930) ("The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not."). She would have been required to turn the money over to the University and would have acted as a "mere conduit" for the transfer of the funds. *Christiansen v. Commissioner,* 60 T.C. 456, 461 (1973); *Emmons,* 36 T.C. at 738. Therefore, because the tuition and expense money was to be used for the exclusive benefit and support of the children, the fact that a precise sum or percentage was not specified in the agreement is not crucial. As noted in *Abramo v. Commissioner,* 78 T.C. 154, 161 (1982):

> When the Supreme Court stated [in *Lester*] "a sum certain or percentage of the

payment" made to the wife sufficiently fixes the amount excludable from the wife's income as child support, it meant that the total payment which the husband must make is to be allocated precisely between wife and children, not that the total payment be numerically fixed.

Similarly, Sperling's reliance on *Van Oss v. Commissioner,* 25 T.C.M. (CCH) 403 (1966), aff'd, 377 F.2d 812 (2d Cir.1967), is misplaced. In *Van Oss,* the separation agreement provided that the husband would reimburse his former wife for tuition costs in excess of $1,000 per child per year. Since she had three children, the wife argued that $3,000 of the total fixed annual payment of $24,000 made by the husband to her constituted child support. The tax court rejected this contention since the wife had complete and unfettered control of the money received from her former husband and was not obligated to spend the money on behalf of her children. As such, the wife was not a conduit for the payments. 25 T.C.M. (CCH) at 406.

This case factually is closer to *Marshall v. Commissioner,* 35 T.C.M. (CCH) 138 (1976), than to either *Lester* or *Van Oss.* In *Marshall,* the order of support required the husband to pay a fixed sum for the support of the wife and children and required him "to pay in addition ... all college expenses." 35 T.C.M. (CCH) at 139. The court held that the husband's obligation to pay the college expenses of his children above and beyond the fixed payment was "sufficiently designated as child support." *Id.* at 141. In so doing, the court considered and distinguished both *Lester* and *Van Oss,* stating:

> Both *Lester* ... and *Van Oss* ... focus on a wife's receipt of an aggregate sum which she was free to apply to whatever purposes she so chose. In other words, mere contractual or judicial suggestion that a portion of a payment should be applied to the children's benefit does not detract from the wife's freedom to spend it as she sees fit. This freedom does not inhere in payments to cover expenses incurred on behalf of the ... children. *Id.*

Sperling contends that an affirmance here will "erode the *Lester* Court's rejection of any loose standard that can only lend itself to numerous inconsistent court determinations in similar factual patterns." *Lester* is not implicated in this decision and it applies, as ever, in situations where a general payment is made between spouses. The instant decision applies to cases where a separate payment is called for by the parties' agreement or by court order and is earmarked for specific, support-related purposes.

Sperling also contends that the college expense payments constitute alimony because they conferred an economic benefit on Phyllis by relieving her of her share of the legal obligation to provide a college education for her children. The point is meritless. It is not clear whether New York law at the time of the Sperlings' separation and divorce required parents to pay for the college education of their children. However, whether or not this obligation existed is irrelevant to the resolution of this issue. On the one hand, if New York law did not give rise to such a duty on Phyllis' part, then it cannot be said that Sperling's payments relieved her of a legal obligation. On the other hand, even if Phyllis were required to provide for her children's college education, section 71(b) precludes Sperling's payments in satisfaction of this obligation from being included in Phyllis' gross income. Payments by the husband to the custodial wife to relieve her of her obligation to support her children generally confer an economic benefit on the wife since they obviate the need for her to expend a like amount. However, the purpose of section 71(b) is to *exclude* these otherwise includable payments from the custodial wife's income. Therefore, it makes no difference whether Phyllis received an economic benefit from Sperling's tuition payments.

Sperling also argues that the tax court improperly excluded evidence offered by him to show that Phyllis affirmatively assumed the obligation of sending her children to college, thus rendering his payments thereto a form of economic benefit to her. The court excluded this evidence on the basis of the "rule" in *Lester*, as interpreted, that extrinsic evidence will not be permitted to alter the language of a divorce decree or separation agreement specifying payments as alimony or child support where the decree or agreement specifically and unambiguously fixes the character of the payments. *See Estate of Craft v. Commissioner*, 68 T.C. 249, 263–64 (1977), aff'd, 608 F.2d 240 (5th Cir.1979) (per curiam); *Giordano v. Commissioner*, 63 T.C. 462, 465–67 (1975); *Grummer v. Commissioner*, 46 T.C. 674, 678–80 (1966). The rule is grounded on the statutory interpretation in *Lester* that the instrument or decree itself must express a clear intent to designate payments or portions thereof as child support. Sperling seeks to evade the rule by arguing that the evidence was offered not to establish the intent of the parties to designate the payments as child support but rather to show that Phyllis received an economic benefit as a result of these payments, *i.e.*, that Phyllis acknowledged her responsibility to educate her children and sought payments from Sperling in order to satisfy this obligation. Because economic benefit analysis is inappropriate to the proper characterization of the payments in question any evidence that Phyllis acknowledged her obligation to provide her children with a college education is irrelevant.

■ Furthermore, the language in the separation stipulation and judgment of separation is clear and unambiguous. The separation stipulation states in section 9 that "husband agrees to pay to the wife *as alimony* for her support and for the support, maintenance and *education* of the children, *except as hereinafter set forth,* the sum of ... $644.23 per week." (emphasis added). The agreement then adds that "*[i]n addition to the foregoing payment* the ... husband is to pay for the following items ... tuition, laboratory fees, books and residence fees for each child for four years at college." (emphasis added). The judgment of separation also calls for payment of college expenses by Sperling separately from his

general obligation to pay a weekly lump sum for the support and maintenance of Phyllis and the support, maintenance and education of the children. This language specifically excludes college expenses from the general payment of alimony. We believe that both the stipulation and the judgment specifically and unambiguously fix the character of the college expense payments. Extrinsic evidence, therefore, was properly excluded.

## II. *Life Insurance Premiums*

The separation stipulation and judgment provided that Phyllis would transfer in trust to two attorneys several life insurance policies on the life of Sperling which she owned. Sperling agreed to pay the premiums on these policies and was prohibited from borrowing against the cash value of all of the policies except one. The stipulation and judgment provided that Phyllis would remain the beneficiary as long as she remained unmarried and any of the children remained under 21 years of age or had not completed their educations; if she did remarry, those children under 21 or those who had not completed their educations would become the beneficiaries in equal parts. Finally, the stipulation and judgment called for complete ownership to vest in Sperling if Phyllis remarried and all of the children attained the age of 21 and completed their educations. With the exception of the limited borrowing privilege noted above, neither Sperling nor Phyllis had any right to control the policies while they remained in trust. Phyllis remarried in June 1975 and was replaced as beneficiary of the policies by the children as co-beneficiaries on July 28, 1975.[7] Sperling became the owner of the policies on September 30, 1981 when all of the children reached the age of 21 and completed their educations and when Sperling's alimony obligations terminated.

Sperling's claim that he was entitled to deductions for premiums paid on the policies was rejected by the tax court on the basis of *Stevens v. Commissioner,* 439 F.2d 69 (2d Cir.1971). He maintains that the tax court's reliance on *Stevens* was misplaced and that *Stevens* actually supports his position.

*Stevens* held that in order for premium payments on a straight life policy to be income to the wife (and therefore deductible from gross income by the husband) there must be (a) absolute ownership of the policy by the wife; and (b) an irrevocable designation of the wife as beneficiary. *Stevens,* 439 F.2d at 71–72. *See Piel v. Commissioner,* 340 F.2d 887, 890 (2d Cir.1965) ("ownership of the policies is necessary to support a deduction"); *Hyde v. Commissioner,* 301 F.2d 279 (2d Cir.1962); *Weil v. Commissioner,* 240 F.2d 584 (2d Cir.), *cert. denied,* 353 U.S. 958, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957). *See also* Rev.Rul. 70–218, 1970–1 C.B. 19; J. Chommie, Federal Income Taxation 492 (2d ed. 1973) ("it is now settled that the statute does not embrace premiums paid on life insurance policies unless the policy is assigned to the wife and she is the irrevocable beneficiary"). This latter condition is fulfilled where the wife's interest in the policy terminates if she predeceases the husband and the children are designated as irrevocable contingent beneficiaries. *Stevens,* 439 F.2d at 72.

Constructive receipt by the wife of the premium payments, the theory on which such payments by the husband are included in the wife's gross income, demands exacting standards. *Id.* at 71. Any lesser guideposts would require the wife to include her former husband's premium payments on her behalf in her gross income even though she is not the "owner" of the insurance policy in the traditional sense. The policy in this area is to preclude alimony income to the wife where the benefit conferred upon her

7. Sperling cannot claim that premium payments made for the remainder of 1975 and for 1976 constitute alimony to Phyllis based on an economic benefit theory where Phyllis was not the beneficiary of the policies.

is insubstantial. Conversely, the husband should be allowed an alimony deduction for premiums paid where he retains no interest in the policy and the wife receives substantial benefits from the payments.

■ Neither prong of the two-point test enumerated in *Stevens* was satisfied here. First, Phyllis was not the absolute owner of the policies. Rather, the policies were transferred by her to the trustees pursuant to the separation stipulation and judgment. Sperling eventually became the owner of the policies. Phyllis enjoyed none of the normal rights associated with ownership of a whole life policy, such as the power to change the beneficiary, to borrow against the policy or to surrender it for cash.

Second, there was no irrevocable designation of Phyllis as beneficiary and the children as contingent beneficiaries. The separation stipulation and judgment provided that Sperling would become the owner of the policies if Phyllis remarried and after the children turned 21 and completed their educations. This actually occurred. Furthermore, *Stevens* indicated that for section 71(a) to be applicable, the wife's coverage as beneficiary under the policy must be co-extensive with the period that she is to receive alimony. *Id.* at 72–73. This was not the case here. According to the separation stipulation and judgment, alimony payments were to continue until Phyllis remarried and the children turned 21 or became self-sufficient. Phyllis remarried in 1975 but continued to receive reduced alimony payments because the children had neither completed their educations nor turned 21. Nonetheless, Phyllis was removed as the beneficiary in 1975.

Sperling asserts that he conferred an economic benefit on Phyllis in that the premium payments helped guarantee that Phyllis would receive the alimony due her if he died before his obligations to her ended. In other words, he maintains that the policies should be considered term insurance on his obligations. He argues that this security constituted an economic benefit to Phyllis. We note that some courts have found such benefits to be *de minimis* and have refused to find constructive receipt by the wife of the premium payments for term insurance. *See Wright v. Commissioner,* 62 T.C. 377, 398–99 (1974), *aff'd,* 543 F.2d 593, 600–01 (7th Cir.1976); *Brodersen v. Commissioner,* 57 T.C. 412, 417–18 (1971). *See also* 5 J. Mertens, Law of Federal Income Taxation § 31A.05, at 52 (1975) ("Where an insurance policy is merely security for alimony payments to the wife no deduction is allowable to the husband for premium payments made by him."); A. Parker, Stanley & Kilcullen's Federal Income Tax Law § 71, at 34 (6th ed. 1974) ("if the policy constitutes, essentially, security for the husband's obligation and [the wife] is only the contingent beneficiary, ... then premiums are not alimony to her and, therefore, not deductible to the husband"). In *Stevens,* we indicated that term insurance premiums could be deducted where there were no contingencies "which might operate to thwart the wife's receipt of the economic benefit the premium payments conferred, that is, the protection, during a limited term, of the wife's right to receive alimony over the full alimony period." 439 F.2d at 72–73. *But see Baker v. Commissioner,* 205 F.2d 369, 370 (2d Cir.1953) (premiums paid on life insurance policy which was security for alimony payments conferred too remote an interest to the wife and were not constructively received by her). Utilizing this standard, it is clear that this criterion was not met. Phyllis continued to receive alimony payments, albeit reduced, after she remarried. However, she was replaced as the beneficiary of the policies shortly after her remarriage.[8] The duration of the term policy thus was not co-extensive with the alimony obligation. *Stevens* precludes deductibility

---

8. That the children were designated as co-beneficiaries is not significant as the alimony obligation extended to Phyllis and not to the children.

by the husband where such contingencies exist.

Finally, Sperling's argument that he conferred an economic benefit on Phyllis because he made premium payments which she otherwise would have made to keep the policies in force is meritless. Phyllis was under no legal obligation to keep the policies from being cancelled for non-payment of premiums.

Affirmed.

FRIENDLY, Circuit Judge, concurring:

I concur in so much of Judge Meskill's opinion as deals with the life insurance premiums. With respect to the college expenses, I concur in the result. The language of the separation stipulation makes it plain that the college expenses were to be "in addition to" the $33,500 annual payments for alimony and child support, all of which, because of failure to meet the test of § 71(b) as construed in *C.I.R. v. Lester,* 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306 (1961), with respect to child support payments, were includible in the wife's income under § 71(a). It would run counter to the clear intention of the parties to rule that the college expenses were likewise so includible. Since they are thus not includible in the wife's income, § 215(a) prohibits their deduction by the husband. Beyond this, if the college expenses were child support payments, they would meet the *Lester* test and would not be includible in the wife's income on that account and thus again not deductible by the husband. I would say no more.